Greg QUINNEY, individually and
D/B/A GQ Inspection Service, Inc.
v. John M. PITTMAN and Carolyn H. Pittman

94-787                                                      895 S.W.2d 538

Supreme Court of Arkansas
Opinion delivered April 3, 1995

*The Gill Law Firm*, by: *Victor A. Fleming*, for appellant.

*Daggett, Van Dover & Donovan*, by: *Robert J. Donovan*, for appellees.

ROBERT H. DUDLEY, Justice. The primary issue in this appeal is whether venue of this constructive fraud case lay in Monroe County. The trial court correctly ruled that the action was properly brought in Monroe County, and we affirm.

There is no serious dispute about where and when the determinative facts occurred. In the first part of 1992, John and Carolyn Pittman, plaintiffs, resided in Phillips County. John Pittman served as a chancellor of the First Judicial District, and Phillips County is one of the five counties in the district. Judge Pittman was elected to the Arkansas Court of Appeals for a term beginning January 1, 1993.

On July 16, 1992, after Judge Pittman was elected to the court of appeals, the Pittmans entered into a contract for the purchase of a home in Pulaski County, where the court of appeals is located. The contract was conditioned upon the sale of their home in Phillips County and also upon an inspection for defects in the home in Pulaski County.

On July 18, 1992, the Pittmans entered into a contract, styled a "service agreement," for inspection of the home by GQ Inspection Service. Greg Quinney, defendant, did business under the trade name of GQ Inspection Service. The discussions about the service agreement took place in Pulaski County, and the document was executed in Pulaski County. All subsequent statements and acts by GQ were made or done in Pulaski County.

The Pittmans did not know that GQ had previously inspected the home for another couple, who were also prospective purchasers, and had found that a major defect existed under the home. As a result of GQ's discovery of the major defect, the other couple withdrew from their agreement to buy the home. The sellers' real estate agent, Betty Fureigh, expressed displeasure with GQ. Gregory Quinney, GQ's owner, admitted that Betty Fureigh was "mad" about the report. Testimony showed that inde-

pendent home inspectors rely on real estate agents for referral business.

On July 18, the same date the service agreement was made, Lance Lefler, an employee of GQ, inspected the house. The Pittmans were present, but John Pittman was physically unable to crawl under the house. Lefler issued a written report to the Pittmans indicating some areas of dry rot and other problems under the house. The report was made to the Pittmans in Pulaski County.

On July 21, GQ sent a letter to Betty Fureigh, the real estate agent representing the sellers. Fureigh was upset over Lefler's report. Quinney reassured Fureigh that the damage under the house was not extensive. The Pittmans did not see the letter until after filing suit.

On July 28, the Pittmans called Lefler for a reinspection. He orally reported to them, in Pulaski County, that the repairs that had been made were satisfactorily completed. There was conflicting testimony as to whether Lefler informed the Pittmans that additional repair work was necessary.

On August 4, the Pittmans moved out of their home in Phillips County. On August 5, Carolyn Pittman and the children moved into the home in Pulaski County.

On August 4, Lefler was called back to inspect the house. On August 7, 1992, the Pittmans and GQ signed a "Memorandum of Agreement Regarding Inspection and Repairs at 7 Foxhunt Trail." This is the last act involving the Pittmans and GQ, and all of these acts took place in Pulaski County.

On August 14, John Pittman moved into a recreational cabin the family owned in Monroe County. Monroe County is also within the First Judicial District. John Pittman intended to reside in the cabin in the judicial district for the remaining weeks of his term as chancellor. On about half of the weekends he drove to Pulaski County to be with his family, and on other weekends his family came to Monroe County to see him. He spent all of the week nights and half of the weekends at the cabin. He had a telephone and all utilities, as well as a computer, some office equipment, and some of the court reporter's equipment there. He registered to vote in Monroe County.

On August 20, 1992, the Pittmans paid for the house in Pulaski County, received a warranty deed to it, and executed a mortgage to the lender. The loan closing was conducted in Pulaski County. Proof showed that the Pittmans, at least in part, relied on the GQ report and subsequent reinspections in purchasing the home. Shortly thereafter, the Pittmans learned that there was a real danger of the first floor collapsing and that the only acceptable repair of the house would involve the removal and replacement of all first floor joists, beams, supporting beams, subflooring and flooring, as well as extensive support, all at a cost of approximately $150,000.

On September 25, 1992, the Pittmans filed suit in Monroe County for constructive fraud against Gregory Quinney d\b\a GQ Inspection Service, Inc., the sellers of the home, the sellers' real estate agent and the agency for whom she worked, and a termite inspection service. None of the other defendants had committed any act in Monroe County. The Pittmans subsequently settled with all of the defendants except GQ. In late December 1992, Judge Pittman moved to Pulaski County in order to serve on the court of appeals, beginning in January 1993.

GQ Inspection Service moved to dismiss the complaint on the ground that venue did not properly lie in Monroe County. GQ argued that the applicable statute required a suit for constructive fraud to be filed in the county of the defendant's residence or where the allegedly fraudulent acts were committed, which was Pulaski County. Alternatively, GQ argued that even if the statutes did not so require, the Pittmans could not file suit in Monroe County because neither of them was a resident of that county for venue purposes. The trial judge ruled that venue was properly fixed in Monroe County under Ark. Code Ann. § 16-60-113(b) (1987) because John Pittman resided in that county at the time suit was filed. The case went to trial, and a Monroe County jury found GQ guilty of constructive fraud and returned a verdict of $120,000.00. After the settlements are taken into account, GQ will be required to pay $30,000.00 under the judgment. On appeal, GQ repeats each of its venue arguments.

We first address GQ's statutory argument. Venue is fixed by statute. Since statehood, the General Assembly has provided that the basic rule of venue is that a defendant must be

sued in the county where he lives or is summoned. Ark. Revised Stat. ch. 116, § 4 (1838); Ark. Code Ann. § 16-60-116 (1987); *First South, P.A.* v. *Yates*, 286 Ark. 82, 689 S.W.2d 532 (1985). The Pittmans' suit alleged a constructive fraud. We have consistently held that the venue statutes do not allow a plaintiff to file suit for economic damages as the result of a fraud in a county when the only connection with that county is the plaintiff's residence. See *First South, P.A.*, 286 Ark. 82, 689 S.W.2d 532, for a complete history of the statutes and our cases.

However, in 1985, the General Assembly enacted Act 921, which is codified as Ark. Code Ann. § 16-60-113(b) (1987). It is our fundamental duty, of course, to give effect to the legislative purpose set by the venue statutes. Subsection (b) of section 16-60-113 currently provides as follows:

> Any action for any type of fraud may be brought in the county where any one (1) plaintiff resides or any one (1) defendant is located, in the county where one (1) or more of the acts utilized to induce, perpetuate or conceal the fraud was performed, or the county from which an act or one (1) or more of the fraudulent acts or part of a scheme to defraud was originated or was communicated from or into by telephone, mail, or other means orally or in writing.

In listing the alternative venues for fraud, the General Assembly followed the recognized rule of grammar that a list of items followed by commas and ending with the word "or" between the final two items shall be read in the disjunctive. *See Hughey* v. *State*, 310 Ark. 721, 840 S.W.2d 183 (1992). The current statute thus provides three separate venues for fraud:

> (1) the county where one plaintiff resides or one defendant is located;
>
> (2) the county where one or more of the fraudulent acts occurred; or
>
> (3) the county where the fraud originated or from which it was communicated.

The statute is clear: "Any action for any type of fraud may be brought in the county where any one (1) plaintiff resides. . . ." Ark. Code Ann. § 16-60-113(b) (1987). The statute

uses the present tense by providing that suit may be brought where one of the plaintiffs "resides." It does not use the past tense, or refer to the county of residence "at the time the cause of action arose," as does the first subsection of the statute, subsection (a). The distinction between subsections (a) and (b) of section 16-60-113 was obviously intentional. It allows a plaintiff to file suit for fraud in the county of his residence at the time of the filing of the complaint, no matter where the fraud occurred.

■■ GQ argues that the title and emergency clause of the 1985 amendment do not mention that an action for fraud can be brought in the county where one of the plaintiffs resides, and we should look to the title and emergency clause to determine the true legislative intent. When the meaning of a statute is ambiguous, we will look at either the title or the emergency clause, or both, in order to determine legislative intent, but when the language of a statute is certain and the intent obvious from that language, we need not resort to a search of the title or emergency clause. *American Casualty Co.* v. *Mason*, 312 Ark. 166, 848 S.W.2d 392 (1993). The statute at issue is certain. In summary, the trial court correctly ruled that the 1985 act changed the law so that an action for fraud could be brought in Monroe County, the county where one of the plaintiffs resided at the time the suit was filed.

■ GQ fleetingly contends that Ark. Code Ann. § 16-60-113(b) does not apply to actions for constructive fraud. The statute provides that it applies to "[a]ny action for *any* type of fraud." *Id.* (emphasis added). We have previously held that the meaning of the statute is obvious, and it applies to actions for constructive fraud. *Evans Indus. Coatings, Inc.* v. *Chancery Court*, 315 Ark. 728, 870 S.W.2d 701 (1994).

■ GQ next argues that, even if the statute allows a fraud action to be brought in the county where one of the plaintiffs resides, John Pittman did not reside in Monroe County. In *Goodwin* v. *Harrison*, 300 Ark. 474, 780 S.W.2d 518 (1989), when faced with the same issue, we examined our past cases involving the residence of a plaintiff under Ark. Code Ann. § 16-60-112(a) (1987). The language of that statute and the statute at issue are comparable. We concluded that the General Assembly was aware of the difference between the words "residency" and

"domicile," was aware of the fact that a person might have a residence in one county and his domicile in another, and deliberately chose to use the word "residency." "Residency" means the place of actual abode, not a home which one expects to occupy at some future time. *Id.* at 479, 780 S.W.2d at 520. There is no valid reason to make a distinction between the statute at issue in that case and the statute at issue in this case. Thus, we hold that the statute allows a suit for fraud to be filed at the place of actual abode of one of the plaintiffs. John Pittman's actual abode was in Monroe County at the time he filed the suit.

■ GQ additionally argues that, even if the statute provides that the action can be brought in the county where one of the plaintiffs resides and even if John Pittman was a resident of Monroe County, he did not reside there when the cause of action accrued; therefore, venue was improper in Monroe County. The statute at issue, subsection (b) of section 16-60-113, provides that a cause of action for fraud can be brought in the county where "any one (1) plaintiff resides." The statute uses the present tense, which indicates residency at the time the suit is filed. GQ's argument below, and its argument on appeal, both involve cases construing another statute, Ark. Code Ann. § 16-60-112 (1987). That statute, unlike the one currently at issue, provides that venue for personal injury action lies "in the county where the person injured or killed resided *at the time of injury.*" *Id.* § 16-60-112(a) (emphasis added). That statute, 16-60-112, does fix the time of residency "at the time of injury," but the General Assembly chose not to use that language in the statute now before us, 16-60-113(b), and instead provided that suit can be brought in the county where "any one (1) plaintiff resides."

■ As a subpart of this argument, GQ argues that any fraud it might have committed was completed by August 7, 1992, the date the Pittmans and GQ signed the "Memorandum of Agreement Regarding Inspection and Repairs at 7 Foxhunt Trail." GQ's abstract does not reflect that this argument was raised during the pretrial hearing on GQ's motion to dismiss for lack of venue and at trial the Pittmans testified without objection that they relied on all of GQ's representations in their purchase of the home on August 14, 1992. In addition, the jurors were instructed, without objection, that they were to determine whether the Pittmans suffered damages as a result of their purchase of the house in

reliance on misrepresentations by GQ. Thus, this argument was not raised at the trial level, and we will not consider a matter raised for the first time on appeal. *Pledger* v. *C.B. Form Co.*, 316 Ark. 22, 871 S.W.2d 333 (1994).

GQ next contends that the trial court erred in refusing to grant a directed verdict in its favor. A motion for a directed verdict is a challenge to the sufficiency of the evidence. Our standard in reviewing the sufficiency of the evidence is well settled: (1) The evidence is viewed in a light most favorable to the appellee; (2) the jury's finding will be upheld if there is any substantial evidence to support it; and (3) substantial evidence is that of sufficient force and character to induce the mind of the factfinder past speculation and conjecture. *Allred* v. *Demuth*, 319 Ark. 62, 64, 890 S.W.2d 578 (1994). GQ moved for a directed verdict on the specific ground that there was no justifiable reliance by the Pittmans on its representations. The trial court correctly denied the motion.

It was undisputed that the Pittmans employed GQ to inspect the home before they decided to purchase it. Lance Lefler, an employee of GQ, inspected the home on two occasions. There was a dispute over the contents of Lefler's statements to the Pittmans. John Pittman testified that Lefler indicated on his second visit that the repair work had been completed properly. Pittman testified that he and his wife relied on this statement in making a commitment to the sellers to accept the repairs as satisfactory. He also stated that he overheard a conversation between Lefler and Betty Fureigh, the real estate agent for the seller, discussing the reinspection and Lefler said· that only a few boards needed to be replaced. Carolyn Pittman testified that on Lefler's second inspection he indicated that the repairs that had been made were satisfactory and only a few boards still needed to be replaced. This testimony, while disputed by GQ, amounted to substantial evidence to support the jury's finding of fact. It is the province of the finder of fact to weigh the credibility of witnesses. *Maloy* v. *Stuttgart Memorial Hosp.*, 316 Ark. 447, 872 S.W.2d 401 (1994). GQ makes other arguments about insufficiency of the evidence, but because those arguments were not brought to the attention of the trial court, we do not consider them.

GQ's next assignment of error is that the trial court erred in allowing into evidence a letter from Greg Quinney, GQ's owner, written to Betty Fureigh, the sellers' real estate agent. The letter states, in pertinent part, that "the additional damage not reported in the initial inspection [for the previous prospective purchaser] is not extensive" and that the "repair work for the dry rotted joists is satisfactory." The ruling admitting the letter occurred as follows. A witness for the Pittmans, an architect, testified: "If I were doing an inspection for a homeowner I would have said something more than what was stated in the GQ report. I would have been direct about the extensiveness of the damage involved. It is widespread, over the entire house. And I think I would have been a little clearer on where the damage was and the extent of the damage." The Pittmans' attorney started to ask the next question and then said only, "We have a letter here." GQ's attorney objected and stated in part: "It [the letter] has the potential to be a prior inconsistent statement, and we have not objected to it being a part of the record. However, unless Mr. Donovan [Pittmans' attorney] can show otherwise, it was not material or relevant to any issue that this witness is going to testify to and is not in evidence yet. I can see where it would be admissible to impeach Mr. Quinney's credibility, but since it did not come up prior to closing, it does not appear that the information contained in it —[.]" At this point the trial court overruled the objection. GQ's attorney stated that the Pittmans would use the letter to show that Greg Quinney was saying one thing while his employee was saying another.

On appeal GQ argues that the Pittmans did not rely on the letter, and, therefore, it was immaterial. In its reply brief GQ argues that the trial court did not conduct an A.R.E. Rule 403 weighing of probative value against unfair prejudice. Neither of these arguments was made to the trial court. At trial, GQ admitted that the letter would be admissible for impeachment. Its relevancy argument was that the letter was not relevant to the testimony of the architect. In short, GQ's argument to the trial court was that the letter was admissible, but not through the testimony of the architect. However, GQ does not pursue that argument on appeal. Rather, on appeal GQ argues that the Pittmans did not rely on the letter, and there was no Rule 403 weighing. Because these arguments are raised for the first time on appeal, we do not consider them.

■ GQ's next point of appeal is that "[t]he court erred in disallowing GQ to use and argue a comparative fault defense to the jury and in failing to give a comparative fault instruction." The trial judge ruled that the action was for constructive fraud and that the comparative fault statute, Ark. Code Ann. § 16-64-122 (Supp. 1993), applies to "actions for damages for . . . injury to property in which recovery is predicated upon fault" and that this was neither an action for "injury to property," nor was it an action involving "fault" as that word is defined in the statute. Subsequently, GQ did not proffer any comparative fault instructions that it might have wanted given. A party cannot complain about the failure to give an instruction when he did not proffer the instruction. ARCP Rule 51; *Precision Steel Warehouse, Inc.* v. *Anderson-Martin Mach. Co.*, 313 Ark. 258, 854 S.W.2d 321 (1993).

Finally, GQ contends that the trial court erred in granting a directed verdict against its counterclaim. GQ filed a counterclaim that refers to the contract between the Pittmans and GQ and then alleges:

> The claim against GQ is itself a breach in that it alleges GQ's inspection was exactly that which the language quoted above from Exhibit A [the contract] says it was not.

> Counterdefendant's breach of contract by naming GQ herein has caused GQ damages in the form of legal fees and lost earnings and going to trial as a defendant herein will cause GQ further legal fees and lost earnings. Upon prevailing herein, GQ should be entitled to all costs, plus attorney's fees.

■ In its argument, GQ contends that the Pittmans breached the contract with GQ by filing the constructive fraud action because the contract provided that GQ's inspection services "are not deemed to be a warranty." GQ cites no authority for upholding the counterclaim, nor does it make a convincing argument for reversal on the point, and we see no apparent merit in the argument. When an appellant neither cites authority, nor makes a convincing argument, and where it is not apparent without further research that the point is well taken, the appellate court will affirm. *Mikel* v. *Hubbard*, 317 Ark. 125, 876 S.W.2d 558 (1994).

Affirmed.

Special Justice GEORGIA ELROD joins in this opinion.

NEWBERN, J., not participating.