The Honorable Larry Teague State Representative P.O. Box 903 Nashville, Arkansas 71852-0903
Dear Representative Teague:
This is in response to your request for an opinion on the constitutionality of House Bill 1151 as amended. The bill proposes, in its title: "AN ACT TO PROVIDE THAT ALL ELECTED COUNTY TREASURERS MUST MEET MINIMUM CONTINUING EDUCATION REQUIREMENTS TO RETAIN OFFICE; AND FOR OTHER PURPOSES."
The bill provides that within one year after the date a person first takes office as elected county treasurer, he or she must successfully complete a six hour course of instruction in the performance of the duties of the office. The act also provides that a county treasurer who has not previously attained "certification," must attain certification in the "Arkansas County Treasurer's Association Continuing Education and Certification Program" by completing thirty hours of instruction within twenty-four months after the date of taking office, or if already in office, within twenty-four months after the effective date of the act. The six hour requirement is counted toward the thirty hour requirement, and continuing education hours obtained prior to the effective date of the act may be counted towards certification. County treasurers who obtain or who have obtained certification must "update" their certification by completing at least eighteen hours of instruction every twenty-four months.
There are two pertinent provisions of the bill which pertain to the penalty for noncompliance with the continuing education requirements, and which, in my opinion, are the most pertinent to determining the constitutionality of the bill. Section 5 of the bill refers to and elaborates on A.C.A. § 14-14-1311(1987). That statute, enacted as a part of the "County Government Code" in 1977, restates verbatim the provisions of Arkansas Constitution, art. 7, § 27 as follows:
 The circuit court shall have jurisdiction, upon information, presentment, or indictment, to remove any county or township officer from office for incompetency, corruption, gross immorality, criminal conduct, malfeasance, misfeasance, or nonfeasance in office. [Emphasis added.]
The bill states that: "(a) For purposes of removal from office under Arkansas Code Annotated 14-14-1311 `incompetence' in the case of county treasurer includes the failure to complete a course of instruction in accordance with this act."
Similarly, the bill proposes to amend A.C.A. § 14-14-1308 (1987), which defines the circumstances under which a vacancy is deemed to occur in a county, county quorum court district, or township office. That statute contains a number of circumstances which create a vacancy, including death and resignation, but also lists at 14-14-1308(a)(8) the circumstance where: "The incumbent is convicted of a felony, incompetence, corruption, gross immorality, criminal conduct, malfeasance, misfeasance, or nonfeasance in office by judicial proceedings." An automatic vacancy is created in office under these circumstances. The bill proposes to amend this statute by adding a section which reads "Failure to comply with educational requirements shall be considered by the court as evidence of incompetence under subsection (a)(8) of this section."
The bill also "grandfathers in" any elected county treasurer who has served at least five years prior to the effective date of the act, by providing that such treasurers may be certified "by virtue of years served."
You have not indicated any particular theory under which the bill may be unconstitutional. My research of the question reveals three arguments which might be advanced against the constitutionality of the bill. The issues presented have not been squarely decided by any Arkansas court, and it is impossible to predict with certainty what the Arkansas Supreme Court would hold on the question. In my opinion, however, the bill could well be held unconstitutional as an impermissible attempt to supplement the constitutional scheme for the removal of county officers, as a legislative encroachment on the powers of the judiciary under the separation of powers doctrine, and as prescribing an additional impermissible qualification to the constitutional office of county treasurer. These issues are analyzed below.
It is necessary, as an initial matter, to set out the powers of the legislature over the subject matter of county affairs and county officers. Although the adoption of Amendment 55 to the Arkansas Constitution granted enlarged authority for self-governance to counties, it is clear that that authority remains subordinate to the state. Amendment 55 provides that counties may "exercise local legislative authority not denied by the Constitution or by law." Id. at § 1(a). (Emphasis added). Additionally, § 4 provides that "The Quorum Court shall meet and exercise all such powers as provided by law." (Emphasis added). It is clear, therefore, that the legislature is not prohibited by Amendment 55 from enacting laws regulating the conduct of the affairs of counties, or the actions of county constitutional officers, so long as the enactment is not violative of the Arkansas or United States Constitutions. See also Comment, County Government Reorganization inArkansas, 28 Ark. L. Rev. 226, 230 and 237, n. 45. (Summer 1974).
In my opinion House Bill 1151 may be subject to challenge under three separate provisions of the Arkansas Constitution. As noted previously, the Arkansas Constitution provides a mechanism for the removal of county officers. See Arkansas Constitution, art. 7, § 27. That provision gives the power of removal to the circuit court. It has been held that this provision and the impeachment provisions provide a complete scheme for the removal of county and state officers, and that the legislature is without power to interfere with or supplement their operation. See generally,Speer v. Wood, 128 Ark. 183, 193 S.W. 785 (1917). Thus, any attempt by the legislature to either directly or indirectly add an additional ground for removal from office which is not enumerated in the Constitution would in all likelihood be struck down by the court.
House Bill 1151, however, does not attempt, in so many words, to add an additional ground for removal, but defines the existing ground of "incompetence" to include failure to comply with the continuing education requirements imposed by the bill. In my opinion, the construction of the word "incompetence" as used in Arkansas Constitution, art. 7, § 27 is a task for the judicial branch. In this sense, House Bill 1151 also raises questions under the "separation of powers doctrine."[1] Although the Arkansas legislature retains all legislative power not denied it by the constitution, it may not encroach upon a coordinate branch's area of authority. Arkansas Constitution, art. 7, 27 expressly confers jurisdiction upon the circuit court to remove county officers for incompetence. In my opinion, it is for the court to determine whether certain conduct rises to the level of incompetence within the meaning of this provision. House Bill 1151, in seeking to amend A.C.A. § 14-14-1311
(which is merely a legislative restatement of the applicable constitutional provision), provides expressly that the term "incompetence" includes the failure to complete the required certification and continuing education requirements. The bill also states that failure to comply with such requirements "shall be considered by the court as evidence of incompetence." The legislature is without power, in my opinion, to dictate to the judicial branch the meaning of a term used in our constitution, particularly where, as here, the relevant constitutional provision expressly grants jurisdiction to the judicial branch.[2] This conclusion is supported by the following passages from Corpus Juris Secondum:
 It is beyond the power of the legislature to place a binding construction on a constitutional provision, as such function belongs to the judiciary . . . and is within the scope of judicial powers and functions . . . and an interpretation by the court of a constitutional provision is binding on the legislature. Constitutional interpretations by the courts are incorporated in the instrument itself and are beyond the power of the legislative branch of government to change. . . .
 The power to remove a public officer or employee for dereliction of duty or other causes is not essentially a judicial power, and, subject to constitutional restrictions, it may be exercised by the legislature or by such other authority as the legislature may designate without encroachment on the judicial branch of the government. So, the legislature, is not attempting to exercise judicial functions by adding new causes which may produce a vacancy in office. However, where under the constitution the discharge of a judicial employee is a judicial power, such powers may not be policed, encroached upon, or diminished by the legislative branch. . . .
 Generally, investigation of the facts involved in a controversy and the determination of their relevancy are matters for the judiciary, and not the legislature, so that facts in a judicial proceeding cannot be determined by legislative fiat. The legislature cannot unduly circumscribe the power of courts to determine the sufficiency of the evidence. . . . As a general rule, the legislature may not provide that certain evidence shall be conclusive since this would be to usurp the power of the judiciary. . . . The authority of the legislature to create or alter rules of evidence is subject to the limitation that the legislature may not, under the guise of creating rules of evidence, make something `evidence' which is not evidence.
16 C.J.S. Constitutional Law, at §§ 116,117, and 129. (Footnotes omitted and emphasis added). See also generally, Ball v. Roberts, 291 Ark. 84,722 S.W.2d 829 (1987) (legislature may not provide by statute that certain attorneys were not qualified to be appointed to represent indigent criminal defendants); Bell v. Itek Leasing, 262 Ark. 22,555 S.W.2d 1, (1977) (question of whether a transaction is usurious arises under the constitution and is therefore for the courts to determine rather than for the legislature); Cupp. v. Pocahontas Federal Savings andLoan, 242 Ark. 566, 414 S.W.2d 596 (1967) (legislature cannot declare one fact conclusive evidence of another material fact in a controversy); andFiles v. Fuller, 44 Ark. 273 (1884) (a mandate of the legislature to the judiciary, directing what construction shall be placed on existing statutes, is an assumption of judicial power, and unconstitutional).
Thus, according to the authorities above, H.B. 1151 may be subject to challenge under both article 7, § 27 and the separation of powers doctrine.
Moreover, there is an additional constitutional argument which might be advanced against the constitutionality of H.B. 1151. Although H.B. 1151 grants newly elected county treasurers a period of time to comply with the certification requirements, and does not impose any additional eligibility requirements on candidates for the office, it does provides for removal from office for failure to comply within a certain period. If a treasurer does not complete the requisite requirements within the time frames provided, he or she is removed from office. It can be argued under this provision that the bill adds an impermissible additional qualification to the county constitutional office of treasurer.
A similar conclusion was reached in Mississippi County v. Green,200 Ark. 204, 138 S.W. 2d 377 (1940). There, the legislature enacted a statute requiring the county judge in Mississippi County to be "learned in the law," and to have practiced law for three years. The court held that the act violated Arkansas Constitution, art 7, 29, which sets out the qualifications of the county judge and which does not contain any law practice requirements. The court stated:
 The qualifications fixed by the constitution to be county judge in this state inferentially prohibits [sic] the legislature from fixing additional qualifications. Why fix them in the first place if the makers of the constitution did not intend to fix all the qualifications required, and why fix only a part of them and leave it to the legislature to fix other qualifications? There is no reasonable answer to these questions. The makers of the constitution knew exactly what qualifications a county judge should have and fixed them, and of course fixed all of them and not a part of them. The makers of the constitution intended to cover the whole subject of the qualifications for a county judge. Had the makers of the constitution intended otherwise they would have created the office of the county judge with directions to the legislature to fix their qualifications.
200 Ark. at 207.
County treasurers are county constitutional officers.[3] Their office is created at Arkansas Constitution, art. 7, § 46 which provides in pertinent part that:
 The qualified electors of each county shall elect one sheriff, who shall be ex-officio collector of taxes, unless otherwise provided by law; one assessor, one coroner, one treasurer, who shall be ex-officio treasurer of the common school fund of the county, and one county surveyor, for the term of two years, with such duties as are now or may be prescribed by law.[4]
County treasurers are thus constitutional officers, but their qualifications, unlike the county judge in Mississippi County v. Green,
are not expressly set by the Arkansas Constitution. There are some general qualifications for office set in the constitution which are applicable to all officers. See, e.g., Arkansas Constitution, art. 19, § 3
(qualifications of an elector) and § 4 (residence within the political subdivision to be served). It is unclear whether the Arkansas Supreme Court would extend the holding of Mississippi County v. Green to officers whose specific qualifications are not established by the constitution, but who must merely meet the general qualifications set by our constitution. We have no applicable Arkansas precedent on that question. The courts of other states appear to take somewhat different views on the question, depending upon the particular language of their constitutions.[5]
One most recent case, however, is quite analogous, and the court therein found legislation similar to H.B. 1151 to be unconstitutional as creating an additional unauthorized qualification to office. In Reale v. Board ofReal Estate Appraisers, 880 P.2d 1205 (Colo. 1994), the Colorado Supreme Court found that an act which required county assessors to be "licensed" through the completion of fifty-five hours of classroom instruction and the passing of an examination within one year of their election was unconstitutional as an additional qualification to office, even though specific qualifications for the office of county assessor were not set out in the constitution. See also, Thomas v. State ex rel. Cobb, 58 So.2d 173
(Florida 1952) (county school superintendent, a constitutional officer, cannot be required by legislature to have a teacher's license even though no specific qualifications as to his office were set in the Florida constitution); and People ex rel. Hoyne v. McCormick, 261 Ill. 413,103 N.E.2d 1053 (1913) (general eligibility requirements of constitution prohibit legislature from imposing additional residence requirement on county commissioners).
As noted above, however, the courts of other jurisdictions appear to be somewhat split on this "additional qualification" issue, and it is impossible to predict with certainty what the Arkansas Supreme Court would hold if presented with the question. The cases above, however, are in my opinion enough to render the bill constitutionally suspect on this ground.
To summarize therefore, in my opinion H.B. 1151 is subject to challenge and is in all likelihood constitutionally suspect under Arkansas Constitution, art. 7, § 27, art. 4, §§ 1 and 2 (the separation of powers doctrine), and art. 7, § 46.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] See Arkansas Constitution, art. 4, §§ 1 and 2.
[2] A question may arise as to whether the language used in H.B. 1151 is intended to be mandatory on the court, or merely seeks to ensure that the court "consider" failure to comply with educational requirements "as evidence" of incompetence. It appears that the intention of the legislature was the former, i.e., that the court would be bound to find failure to comply with certification requirements as incompetence. The title of the bill lends support to the this conclusion, wherein it states that county treasurers "must meet minimum continuing education requirements to retain office." (Emphasis added.) Although the title is no part of an act, it may be used to construe the language thereof where an ambiguity exists. Quinney v. Pittman, 320 Ark. 177, 895 S.W.2d 538
(1995). If the intention of the legislature is merely to suggest that the court consider failure to comply with educational requirements as one factor in making its judicial determination of whether incompetence exists, the bill loses most of its constitutional infirmity, as well as the effectiveness of the sanction imposed.
[3] Amendment 55 to the Arkansas Constitution, regarding the reorganization of county government, does not mention or affect the status of county treasurers. See Comment, County GovernmentReorganization in Arkansas, supra.
[4] Clearly, the legislature may set the duties of the county treasurer. It appears, however, that the requirement of "certification" and continued education is more in the nature of a requirement to hold the office rather than a duty of the office.
[5] See, e.g., C.T. Foster, Annotation, Legislative Power to PrescribeQualifications for or Consideration of Eligibility to ConstitutionalOffices, 34 A.L.R.2d 155 (1965).