The Honorable Chaney Taylor, Jr. State Representative P.O. Box 2721 Batesville, AR 72803-2721
Dear Representative Taylor:
I am writing in response to your request for my opinion regarding the application of Act 1835 of 2001. Specifically, you have posed the following three questions:
 1. Is this Act [Act 1835 of 2001] constitutional in light of Amendment 14 Section 1 of the United States Constitution (the Equal Protection Clause) and Article 2 Section 3 of the Arkansas Constitution? It appears to me that this Act may be violative of these two sections of the Arkansas and United States Constitution. There appears to be no rational basis for the State regulating the ballot names of only appointed judges. This particular Act on its face would appear to also create significant confusion for the voters.
 Example No. 1: Sam Spade is appointed by the Governor to fill an unexpired term for position 2 on the Arkansas Supreme Court. Position 6 becomes vacant before the next election. Sam Spade decides to run for position 6. At the same time, Pulaski County Justice of the Peace, John Jones, decides to run for position 6 on the Arkansas Supreme Court. Both men are qualified. It appears that under Act 1835 of 2001, that John Jones could be listed as Justice John Jones and that Sam Spade, a sitting Supreme Court Justice, could not have the word justice in front of his name. The ballot title would read Justice John Jones against Sam Spade, clearly misleading the voters.
 Example No. 2: Suzy Smith is appointed to position 1 in District 2 of the Arkansas Court of Appeals. Position 2 of District 2 of the Arkansas Court of Appeals becomes vacant before the next election. Suzy Smith decides to run for position 2 of District 2 of the Arkansas Court of Appeals. Jane Jones, County Judge of Faulkner County, decides that she will run for position 2, District 2 of the Arkansas Court of Appeals. With a literal reading of Act 1835 of 2001, the ballot would list Suzy Smith, a sitting Court of Appeals Judge, as simply Suzy Smith and would list Court Judge, Jane Jones, as Judge Jane Jones, thus, again creating mass confusion, misleading the voters.
 2. Arkansas Code Ann. 7-7-305, which Act 1835 of 2001 purports to amend, is the statute setting out the form of the ballot for the primary elections. The entire statute is for the purpose of setting out the form and the method for placing the names on the party primary ballots. In light of the fact that Amendment 80 changes certain judicial officers to non-partisan status and, therefore, not subject to primary election and nominations, does Act 1835 apply to those judges and judicial candidates covered by Amendment 80 to the Arkansas Constitution?
 3. Assuming that Act 1835 of 2001 is constitutional and applicable to candidates covered by Amendment 80, to whom is the Act applicable? Arkansas Code Ann. 7-7-305(c)(1)(B) provides as follows: "A person may only use the prefix `Judge,' `Justice,' or `Chief Justice' in an election for a judgeship if the person is currently serving in a judicial position to which the person has been elected." It is not clear whether this language applies to Justices of the Peace, County Judges, Municipal Judges, District Judges, Circuit Judges, Court of Appeals Judges or Supreme Court Judges.
RESPONSE
With respect to your first question, although Act 1835 of 2001 contains various classifications that implicate the equal protection clauses of the federal and state constitutions, I can find none that could not be justified as rationally related to a legitimate state end. My analysis of this issue is somewhat complicated by the fact that the title and the text of the act contain flatly contradictory provisions. With respect to your second question, I believe it is totally unwarranted to read A.C.A. § 7-7-305, as amended by Act 1835 of 2001, as applying exclusively to primary election ballots since Ark. Const. amend. 80 effectively did away with judicial primary elections as of November 2000. Quite simply, it would be absurd to read Act 1835 of 2001 as applying exclusively to primary elections that had been abolished at the time the act was enacted. Nevertheless, I concede that the inclusion of Act 1835 in a statute otherwise devoted to primary election ballots is confusing and also invites legislative clarification. With respect to your third question, I strongly doubt the language of A.C.A. § 7-7-305(c)(1)(B) applies to county judges and justices of the peace. I believe A.C.A. §7-7-305 applies to all of the other offices listed in your request.
Question 1: Is Act 1835 of 2001 constitutional in light ofAmendment 14 Section 1 of the United States Constitution (the EqualProtection Clause) and Article 2 Section 3of the Arkansas Constitution?
Act 1835 of 2001 provides:
 For An Act To Be Entitled AN ACT TO AMEND ARKANSAS CODE 7-7-305 TO PROVIDE THAT A CANDIDATE FOR AN APPELLATE JUDGESHIP SHALL NOT USE THE TITLE "JUDGE" OR "JUSTICE" UNLESS THE CANDIDATE HAS BEEN ELECTED TO THE POSITION FOR WHICH THE PERSON IS A CANDIDATE; AND FOR OTHER PURPOSES.
 Subtitle TO PROVIDE THAT A CANDIDATE FOR AN APPELLATE JUDGESHIP SHALL NOT USE THE TITLE "JUDGE" OR "JUSTICE" UNLESS THE CANDIDATE HAS BEEN ELECTED TO THE POSITION FOR WHICH THE PERSON IS A CANDIDATE.
BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:
 SECTION 1. Arkansas Code 7-7-305(c)(1), concerning the candidate's name on a ballot, is amended to read as follows:
 (c)(1)(A) Any person who shall file for any elective office in this state may use not more than three (3) given names, one (1) of which may be a nickname or any other word used for the purpose of identifying such person to the voters, and may add as a prefix to his name the title or an abbreviation of an elective public office the person currently holds.
 (B) A person may only use the prefix, "Judge," Justice," or" Chief Justice" in an election for a judgeship if the person is currently serving in a judicial position to which the person has been elected.
 (B) (C) A nickname shall not include a professional or honorary title.
In assessing the constitutionality of the above statute, I am guided by the following:
 Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. Ford v. Keith, 338 Ark. 487, 996 S.W.2d 20 (1999); ACW, Inc. v. Weiss, 329 Ark. 302, 947 S.W.2d 770 (1997). If it is possible to construe a statute as constitutional, we must do so. Jones v. State, 333 Ark. 208, 969 S.W.2d 618 (1998). In construing a statute, we will presume that the General Assembly, in enacting it, possessed the full knowledge of the constitutional scope of its powers, full knowledge of prior legislation on the same subject, and full knowledge of judicial decisions under preexisting law. McLeod v. Santa Fe Trail Transp. Co., 205 Ark. 225, 168 S.W.2d 413
(1943). We must also give effect to the legislature's intent, making use of common sense and giving words their usual and ordinary meaning. Kyle v. State, 312 Ark. 274, 849 S.W.2d 935 (1993).
Bunch v. State, 344 Ark. 730, 736, 43 S.W.3d 132 (2001).
As suggested in your request, the principle that citizens are entitled to equal protection under the laws is expressed in both the federal and the state constitutions. U.S. Const. amend. 14, § 2 ("nor shall any state . . . deny to any person within its jurisdiction the equal protection of the laws"); Ark. Const. art. 2, § 3 ("The equality of all persons before the law is recognized, and shall ever remain inviolate. . . ."). The equal protection doctrine prohibits certain types of "classifications" that result in the disparate treatment of those who are similarly situated. However, classifications in and of themselves do not violate the equal protection doctrine. In order to establish a constitutional violation arising out of a classification that does not affect a suspect class or a fundamental right, it is necessary to show that the disparity is arbitrary — i.e., that it lacks any rational relation to a legitimate end. Vacco v. Quill, 521 U.S. 793 (1997); Romer v. Evans, 517 U.S. 620,631 (1996); Clements v. Fashing, 457 U.S. 957 (1982); Craft v. City ofFort Smith, 335 Ark. 417, 984 S.W.2d 22 (1998).
 In the recent case of Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356, 366 (2001), the Court offered the following summary of this "rational basis" standard:
 Under rational-basis review, where a group possesses "distinguishing characteristics relevant to interests the State has the authority to implement," a State's decision to act on the basis of those differences does not give rise to a constitutional violation. Id. [Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432 (1985)], at 441, 105 S.Ct. 3249. "Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (citing Nordlinger v. Hahn, 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511
(1976) (per curiam)). Moreover, the State need not articulate its reasoning at the moment a particular decision is made. Rather, the burden is upon the challenging party to negative "`any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Heller, supra, at 320, 113 S.Ct. 2637 (quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)).
In your request, you have characterized Act 1835 of 2001 as ambiguous and asked me to interpret the legislature's intent. As the court noted inBrandon v. Arkansas Public Service Commission, 67 Ark. App. 140, 144,992 S.W.2d 834 (1999): "The first rule in considering the meaning of a statute is to construe it just as it reads, giving words their ordinary and usually accepted meaning in common language. McCoy v. Walker,317 Ark. 86, 876 S.W.2d 252 (1994)." In construing an act to determine legislative intent, one "must also look at the whole act and, as far as practicable, give effect to every part, reconciling provisions to make them consistent, harmonious, and sensible." Brewer v. Department Of HumanServices, 71 Ark. App. 364, 371, 32 S.W.3d 22 (2000). As the court noted in Brandon:
 The language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, legislative history, and other appropriate means that throw light on the subject are used by the court in an attempt to construe legislative intent. Burcham v. City of Van Buren, 330 Ark. 451, 954 S.W.2d 266
(1997). While the title of an act is not part of the law, it may be referred to in order to help ascertain the intent of the General Assembly. Routh Wrecker Serv., Inc. v. Wins, 312 Ark. 123, 847 S.W.2d 707 (1993).
67 Ark. App. at 145-46.
I agree with your conclusion that Act 1835, when both the title and the text are taken into account, is ambiguous in several respects. However, read in isolation, the text of the act is quite straightforward with respect to the following. Subsection (c)(1)(B) of A.C.A. § 7-7-305
provides that a candidate "may only use the prefix, `Judge,' `Justice' or `Chief Justice' in an election for a judgeship if the person is currently serving in a judicial position to which the person has been elected." In my opinion, nothing in the text of the act even remotely dictates that this conditional use of a title pursuant to this statute be restricted to any particular category of "judge" or "justice" or that the contested "election for a judgeship" be for any particular level of judge. Simply put, subsection (c)(1)(B) provides that an elected, sitting jurist may use his title in any race for judicial office, regardless of what judicial office he currently holds and regardless of what judicial office he is seeking.
Thus read, subsection (c)(1)(B) represents a narrowing of A.C.A. §7-7-305(c)(1)(A), which generally provides in pertinent part that a candidate for elective office may include with his name on the ballot "an abbreviation of an elective public office the person currently holds." (Emphasis added.) Subsection (c)(1)(B) qualifies the highlighted language by providing that in judicial elections a candidate may only list ajudicial office he currently holds, and only then if he holds the office by election as opposed to either election or appointment.
However, this straightforward reading of the text of Act 1835 is impossible to reconcile with its title and subtitle, both of which unequivocally declare that "a candidate for an appellate judgeship shall not use the title `judge' or `justice' unless the candidate has beenelected to the position for which the person is a candidate." (Emphasis added.) The highlighted terms clearly suggest an intention to restrict the use of titles only in appellate races, and then not merely to elected candidates, but to elected incumbents running for reelection.
Accepted rules of statutory construction provide that the title of an act, although not controlling, may serve to resolve ambiguities in the body of the act. See, e.g., Routh Wrecker Service Inc. v. Wins,312 Ark. 123, 847 S.W.2d 707 (1993). However, absent some ambiguity in the text of the act, courts should not look to the title for clarification. As I noted in Ark. Op. Att'y Gen. No. 2000-083:
 [E]ven if the title of the Act could be read as inconsistent with the text, in my opinion the unambiguous language of the text controls. See, e.g., Weir v. U.S., 339 F.2d 82 (8th Cir. 1964) (the title of an act cannot overcome the meaning of plain and unambiguous words used in the body); Quinney v. Pittman, 320 Ark. 177, 895 S.W.2d 538 (1995) (where language of statute is certain and the intent obvious, Supreme Court may not resort to search of the title).
In my opinion, A.C.A. § 7-7-305(c)(1)(B) is totally unambiguous in providing that a judicial office holder may use his title in a race for any other judicial office, subject only to the condition that the candidate must have been elected to the office he currently holds. I appreciate that the title and subtitle of Act 1835 raise serious questions regarding the legislature's intentions. However, given standard principles of statutory construction, I can only read the law as it is written. I would advise the General Assembly to amend the act if its text does not accurately reflect the legislative intention.
Having clarified what I consider the scope of Act 1835, I will address your equal protection concerns. You have raised the question whether any rational basis exists for allowing only an elected, as opposed to an appointed, jurist to use his or her title in an election. I believe a reviewing court would answer this question in the affirmative. The legislature may reasonably have concluded that only a full elective term of service on the bench sufficiently bears on a candidate's qualifications to warrant disclosure on the ballot. Moreover, the legislature may simply have been attempting to preclude the potential for taking unwarranted advantage in the making of appointments, as might occur if a governor were to fill one court vacancy pursuant to Ark. amend. 29 virtually on the eve of the deadline for filing to run for another judgeship, thereby enabling a candidate with limited or no judicial experience to use the title "Judge" on the ballot. The enactment of Act 1835 avoids this possibility.
Although you do not raise this issue in your request, I should note that Act 1835 further distinguishes between candidates for judicial office, who may use their current judicial titles only if elected to office, A.C.A. § 7-7-305(c)(1)(B), and candidates for any other elective office, who may use their current titles regardless of whether they were elected or appointed to office, A.C.A. § 7-7-305(c)(1)(A). Again, I believe this classification would readily survive an equal protection challenge. In drawing this distinction, the legislature may have intended to acknowledge the law in general, and judicial service in particular, as distinctly "professional" and hence properly subject to stricter campaign controls. See Arkansas Code of Judicial Conduct, Canon 5 (strictly regulating the varieties of political activity a candidate for judicial office may undertake).
Question 2: Arkansas Code Ann. 7-7-305, which Act 1835 of 2001 purportsto amend, is the statute setting out the form of the ballot for theprimary elections. The entire statute is for the purpose of setting outthe form and the method for placing the names on the party primaryballots. In light of the fact that Amendment 80 changes certain judicialofficers to non-partisan status and, therefore, not subject to primaryelection and nominations, does Act 1835 apply to those judges andjudicial candidates covered by Amendment 80 to the ArkansasConstitution?
I disagree that A.C.A. § 7-7-305, as amended by Act 1835 of 2001, concerns itself exclusively with the ballot for primary elections. Indeed, if the entire statute dealt only with primary elections, it would have been absurd for the legislature in 2001 to insert a provision dealing with judicial elections, given that the adoption on November 2000 of Ark. Const. amend. 80, §§ 17 and 18, obviated the need for all judicial primary elections. The Arkansas courts have long held that in interpreting statutory language, it is inappropriate to give the statute a reading that would result in an absurdity, or to presume that the legislature enacted a vain and meaningless law. See Yarbrough v. Witty,336 Ark. 479, 484, 987 S.W.2d 257(1999); Lawhon Farm Servs. v. Brown,335 Ark. 272, 948 S.W.2d 1 (1998); Citizens To Establish A Reform Party v.Priest, 325 Ark. 257, 926 S.W.2d 432 (1996); Henson v. Fleet MortgageCo., 319 Ark. 491, 892 S.W.2d 250 (1995); Neely v. State, 317 Ark. 312,877 S.W.2d 589 (1994); Death and Total Permanent Disability Trust Fundv. Whirlpool Corp., 39 Ark. App. 62, 837 S.W.2d 293 (1992).
Significantly, the only substantive change to A.C.A. § 7-7-305 effected by the text of Act 1835 is contained in the added subsection (c)(1)(B), which provides:
 A person may only use the prefix, Judge," "Justice," or "Chief Justice" in an election for a judgeship if the person is currently serving in a judicial position to which the person has been elected.
(Emphasis added.) Nothing in the highlighted passage restricts this subsection's application to a nonexistent primary election. On the contrary, the statute can only apply to the sole remaining election now held for a judgeship — viz., the general election, which pursuant to Act 1789 of 2001, § 2(b)(1), is held on the same date and at the same time and places as the preferential primary election. See attached Ark. Op. Att'y Gen. No. 2001-177. Although locating this provision within a statute otherwise dealing with primary election ballots may be confusing, I do not believe the provision at issue can be given any reading other than the one I have proposed.
Question 3: Assuming that Act 1835 of 2001 is constitutional andapplicable to candidates covered by Amendment 80, to whom is the Actapplicable? Arkansas Code Ann. 7-7-305(c)(1)(B) provides as follows: "Aperson may only use the prefix `Judge,' `Justice,' or `Chief Justice' inan election for a judgeship if the person is currently serving in ajudicial position to which the person has been elected." It is not clearwhether this language applies to Justices of the Peace, County Judges,Municipal Judges, District Judges, Circuit Judges, Court of AppealsJudges or Supreme Court Judges.
In my opinion, it is unlikely that an elected county judge or a justice of the peace may respectively use the prefixes" Judge" and "Justice" in running for judicial office. At issue is whether each of these officers might accurately be characterized as "serving in a judicial position." Although a county judge performs certain judicial functions as the "county court," the range of those functions is extremely limited.[1]
Likewise, a justice of the peace performs only extremely restricted judicial functions.[2] I strongly doubt that the legislature intended the statute to embrace individuals whose judicial functions might best be characterized as incidental. See Ark. Op. Att'y Gen. No. 89-114 (opining that a county judge's judicial functions are so limited that the Code of Judicial Conduct does not even apply to his activities).
To the extent the statute is ambiguous on this score, I am authorized under the above discussed principles of statutory construction to look to the title of Act 1835 for guidance. As previously discussed, the title suggests that the legislature intended to allow the use of judicial titles only by elected, incumbent appellate court jurists running for reelection. Although I cannot use this title to modify the unambiguous portions of the act, see discussion supra, I can use it to resolve any existing ambiguity regarding whether the act applies only to full-time judicial officers. In light of the act's title, I believe that it does.
Even without referring to the title, in my opinion, a reviewing court might well conclude that the statute simply does not authorize removing the terms "County" and "of the Peace" from the titles "County Judge" and "Justice of the Peace." The term "Justice" is commonly understood to designate a sitting judge on the Supreme Court, whereas the term" Justice of the Peace" is commonly and properly understood to designate a county quorum court member. Likewise, the term "Judge" is commonly understood to designate a sitting trial-court or appellate jurist, whereas the term "County Judge" is commonly and properly understood to designate a primarily executive officer of county government. Nothing in the statute suggests that the legislature intended to authorize blurring these distinctions by allowing a justice of the peace or a county judge to abbreviate his title on the ballot for a judicial election.
As reflected in my response to your previous two questions, I believe Act 1835 clearly applies to all of the other officers listed in your request.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
Enclosure
[1] This office explained the role of the county court as follows in Ark. Op. Att'y Gen. 97-181:
 The "county court" strictly speaking, is neither the "county judge" nor the quorum court. It is, however, presided over by one judge, the "county judge," who, when so presiding, acts in a judicial, rather than an executive capacity. See Arkansas Constitution, art. 7, § 28 and A.C.A. § 14-14-1105(a). It has been stated that: "[a]lthough the Arkansas Supreme Court has meticulously separated the judicial and executive functions of the county judge on a case-by-case basis, there is still great confusion in Arkansas with respect to what the county court is." Comment, County Government Reorganization in Arkansas,
28 Ark. L. Rev. 226, 235 (1974). It was stated, prior to the adoption of Amendment 55, that:" In each county there is a court, presided over by a county judge, known as the county court. . . . The county court is the principal instrument of county government and performs a mixture of executive and legislative as well as judicial tasks." Greenebaum, Arkansas' Judiciary: Its History and Structure, 18 Ark. L. Rev. 152 (1964). Since the adoption of Amendment 55, the county court exercises fewer powers (former powers now being exercised either by the quorum court, or by the county judge in an executive capacity), but it clearly still exists, and consists of the county judge, wearing a judicial hat. See again, A.C.A. § 14-14-1105.
[2] In Ark. Att'y Gen. No. 96-106, my predecessor offered the following regarding the judicial role of a justice of the peace:
 In accordance with Article 7, Section 1 of the Constitution, the judicial power of the state is vested in "one Supreme Court, in circuit courts, in county and probate courts, and in justices of the peace." (Emphasis added.) See also Ark. Const. art. 7, §§ 40-43. Although the jurisdiction of justice of the peace courts has subsequently been restricted (see Op. Att'y Gen. 87-408), it appears that Amendment 55 did not abolish the judicial authority of justices of the peace. See generally Davis, Comment, County Government Reorganization in Arkansas, 28 Ark. L. Rev. 226 (1974). Indeed, the enabling legislation for Amendment 55 (Act 742 of 1977) provides for the compensation of" all justices of the peace serving in a judicial capacity." A.C.A. § 14-14-1205(b) (Supp. 1995). See also A.C.A. § 14-14-1301(b)(1) (1987) (the justice of the peace "shall preside over the justice of the peace courts and perform such judicial duties as may be prescribed by law. . . .")