Scott Wesley HUDSON, Appellant,

v.

Merry MARKUM, Appellee.

No. 05–93–00638–CV.

Court of Appeals of Texas,
Dallas.

March 26, 1997.

Alfred L. Ruebel, Erhard Ruebel & Jennings, P.C., Dallas, for appellant.

Kenneth Raggio, Louise B. Raggio, Raggio & Raggio, Dallas, John B. Worley, Austin, for appellee.

Before KINKEADE, MALONEY and WRIGHT, JJ.

## OPINION

WRIGHT, Justice.

Scott Wesley Hudson appeals from a judgment ordering him to pay child support, damages for fraud, and attorney's fees. In three points of error, appellant contends: (1) the trial court committed fundamental error by allowing the jury to question witnesses; and (2) the evidence is legally and factually insufficient to support the jury's finding that his net resources were $62,682 annually.[1]

### Factual and Procedural Background

Merry Markum (Markum) testified that she met appellant when she went to him for legal advice. Markum and appellant met several times. Eventually, Markum and appellant went to Las Vegas. After the trip to Las Vegas, Markum discovered she was pregnant. During her pregnancy, Markum filed a paternity suit seeking to name appellant as the child's father. According to Markum, she dismissed the suit based on assurances by appellant that he would help support the child. Appellant did not follow through on his promise for child support. When Sterling Joy Markum (Joy) was about two years old, Markum again filed suit seeking support for Joy.

Prior to trial, an agreed order establishing appellant as Joy's biological father was entered. Thus, only the issues of child support, fraud, and attorney's fees remained before the jury. The jury found appellant (1) had annual net resources of $62,682, and (2) intentionally or with malice committed fraud against Joy. Based on these and other jury findings, the trial judge entered a judgment providing that appellant pay (1) child support of $1,044.70 per month, (2) $60,000 in damages for fraud, (3) $10,000 in punitive damages, and (4) attorney's fees. This appeal followed.

### Questioning by Jurors

In point of error three, appellant contends the trial court committed fundamental error by allowing the jury to question witnesses. During the course of the trial, the trial judge allowed the jury to submit written questions to be asked of the witnesses. After the admissibility of the questions was determined outside the presence of the jury, the trial judge read the written questions to the various witnesses. Although appellant did not object to this process at trial, on appeal he argues that the "entire process of juror questioning" is "so perilous to the rights of parties" that we should determine it to be fundamental error. We disagree.

Texas law does not expressly address the issue of questioning of witnesses by jurors. Nor has the Texas Supreme Court addressed this issue.[2] In the only Texas civil case discussing this issue, the Houston First Court of Appeals stated:

> There is nothing improper about the practice of allowing occasional questions from jurors to be asked of witnesses. If a juror is unclear as to a point in the proof, it makes good common sense to allow a question to be asked about it. If nothing else, the question should alert trial counsel that a particular factual issue may need more extensive development. Trials exist to develop the truth.

*Fazzino v. Guido*, 836 S.W.2d 271, 276 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (citing *United States v. Callahan*, 588 F.2d 1078, 1085 (5th Cir.), *cert. denied*, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979)).

---

1. Appellant brought seven points of error before the Court in his brief. Prior to submission, appellant filed a motion withdrawing points of error one, two, four, and five due to bankruptcy proceedings. Therefore, only points of error three, six, and seven remain before this Court.

2. We are aware that the Texas Court of Criminal Appeals has determined that when the jury is allowed to question witnesses "the role of the jury as a neutral-factfinder is significantly modified, [and] the underpinnings of our system, designed to ensure trial by a fair and impartial jury, are likewise compromised." *Morrison v. State*, 845 S.W.2d 882, 889 (Tex.Crim.App.1992). The court of criminal appeals further held that the practice was not subject to a harm analysis. *Id.* We are not, however, bound by the court of criminal appeals in civil cases. Further, Morrison objected to the process on the grounds that it was not authorized by Texas law. Because Morrison objected, and because considerations are different in the criminal context, we conclude *Morrison* is not applicable in this case.

The court rejected the argument that permitting jurors to submit questions to witnesses constituted fundamental error. *Fazzino,* 836 S.W.2d at 276. The court determined that the following procedural safeguards were sufficient to protect the rights of the parties:

1. After both lawyers had concluded their respective direct and cross-examination, the trial court asked the jurors for written questions.

2. The jury and witness left the courtroom while the admissibility of the question was determined.

3. The trial court read the question to both lawyers and they were given the opportunity to object to the questions.

4. The jury and the witness were brought back into the courtroom and the admissible questions were read to the witness verbatim.

5. After the witness answered, both lawyers were allowed to ask follow-up questions limited to the subject matter of the juror's question.

*Id.* at 275.

The record indicates that the trial judge in this case used the procedure outlined above. The jurors submitted a total of 664 written questions. The trial judge asked 504 of the submitted questions to various witnesses. Neither party objected to the procedure, nor did either party object to the number of questions submitted by the jurors.

 We agree with the Houston court that allowing jurors in civil cases to submit questions does not constitute fundamental error. Fundamental error exists only "in those rare instances in which the record shows the court lacked jurisdiction, or the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas." *Wal-Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 328 (Tex.1993). Appellant does not contend the court lacked jurisdiction. We conclude error, if any, did not constitute error that directly and adversely affected the public interest as declared in the statutes or the Constitution of Texas. Although we agree with the Houston court that there is nothing

inherently improper about allowing *occasional* questions from jurors in conjunction with appropriate procedural safeguards to protect the rights of the parties and to prevent undue trial delay, we do not condone the excessive number of questions the jury was allowed to submit. However, in the absence of any objection to the procedure used, we conclude error, if any, was waived. *See* TEX. R.APP. P. 52(a). We overrule point of error three.

**Annual Net Resources**

In points of error six and seven, appellant contends the evidence is legally and factually insufficient to support the jury finding that he has annual net resources of $62,682. Based on this jury finding, the trial judge entered a judgment providing that appellant pay child support of $1,044.70 per month. Appellant does not challenge the support order. Appellant challenges only the sufficiency of the evidence to support the jury finding about his net resources.

 When reviewing a "no evidence" point of error, we consider only the evidence and inferences tending to support the dispositive findings and disregard all evidence and inferences to the contrary. *Sylvia M. v. Dallas County Child Welfare Unit,* 771 S.W.2d 198, 199 (Tex.App.—Dallas 1989, no writ). If there is more than a scintilla of evidence supporting the dispositive findings, we uphold the findings. *Id.* at 200. By contrast, when reviewing "insufficient evidence" points, we consider all the evidence, including evidence contrary to the judgment. *Id.* We set aside the jury's verdict for factual insufficiency only if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

Appellant contends that there is no evidence or insufficient evidence to support the jury's finding because the five-year average on his income tax returns reflects his true annual net resources. Thus, appellant contends, the only evidence before the jury of his annual net resources was significantly less than $62,682 per year. At trial, appellant testified that his only sources of income were from his law practice and social security. According to appellant, changes in the

practice of criminal defense law and the economic climate of the 1980s had seriously decreased his annual income. In addition, appellant testified he was the owner of interests in several corporations on behalf of his family or clients; however, he did not personally benefit from the corporations.

On the other hand, the extensive record in this case also contains evidence that large sums claimed on appellant's tax returns as business expenses were really personal expenditures, including entertainment and legal fees associated with this case. Thus, without these business expenses, appellant's business income was actually much greater than reported on appellant's tax returns. Markum testified that appellant told her that he had personal interests in several corporations, including a tanker business, an insurance company, an oil company, and a business that had something to do with aloe vera. Appellant showed Markum a "monthly check" for $70,000 from an oil investment. Further, according to Markum, appellant told her he "did not believe in currency, that it wouldn't hold up in bad times and that he would always be okay because he had gold reserves secured in European banks."

We conclude the record contains evidence from which the jury could have determined that appellant's income was actually much higher than the income reflected on his tax returns. Federal income tax regulations are distinct from the rules in the Texas Family Code, and calculations prepared under one set of rules do not necessarily comply with the requirements of the other. *Powell v. Swanson,* 893 S.W.2d 161, 163 (Tex.App.—Houston [1st Dist.] 1995, no writ). Thus, contrary to appellant's contention, the jury was not bound by appellant's federal tax returns when it made its determination of appellant's annual net resources. *See id.; see also Wilemon v. Wilemon,* 930 S.W.2d 290, 294 (Tex.App.—Waco 1996, no writ) (federal tax returns are not required to determine annual net resources). After reviewing all of the evidence in this case, we conclude the evidence is legally and factually sufficient to support the jury's finding that appellant's annual net resources were at least

$62,682. We overrule points of error six and seven.

Accordingly, we affirm the trial court's judgment.