The Honorable Kim Hendren State Senator 1501 Highway 72 SE Gravette, AR 72736
Dear Senator Hendren:
I am writing in response to your request for my opinion on the following eight questions, which you have submitted on behalf of the Gentry Public Schools Superintendent:
 1. Do provisions of ACA 6-13-620(7) and 26-80-102 charge public school board members with preparing and publishing a school district's budget "together with a rate of tax levy sufficient to provide the funds therefor"?
 2. Does the wording in the attached annual school election notice for the Gentry School District, as required by Amendment 40 of the Arkansas State Constitution, A.C.A. 6-13-622 and A.C.A. 26-80-102, provide sufficient notice to the school district's electors that the required uniform rate of tax is included in the total 35 mills requested?
 3. Does the wording constitute a "modification" as stipulated in A.C.A. 26-80-102(a) when it states "However, if the rate approved has been modified pursuant to the uniform rate of tax calculated by the State Department of Education, then the tax shall be collected at the modified rate until another rate is approved"?
 4. Does the same wording on the ballot allow the voters to approve the existing total 35 mills to include the uniform rate of tax?
 5. If a majority of the qualified voters in the school district voting in the school election approve the rate of tax proposed by the board of directors, then shall the tax at the rate approved be collected as provided by law?
 6. Does A.C.A. 6-20-808 allow for surplus revenue generated by debt service mills but in excess of the amount required to make the annual debt payment to be used in the district's general operating fund?
 7. Does the fact that the revenue in the amount that the uniform rate of tax's 25 mills would generate was submitted in accordance with Amendment 74, Section 1, "(3) The uniform rate of tax shall be assessed and collected in the same manner as other school property taxes, but the net revenues from the uniform rate of tax shall be remitted to the State Treasurer and distributed by the state to the school districts as provided by law," mean that the uniform rate of tax has been levied in the Gentry School District?
 8. If the answers to the above questions are "yes," does the vote of the electors as allowed by Article 14 of the Arkansas Constitution, when it says "If a majority of the qualified voters in said school district voting in the annual school election shall approve the rate of tax so proposed by the Board of Directors, then the tax at the rate so approved shall be collected as provided by law," supercede [sic] the authority invested by the Arkansas Constitution to the legislative, executive and judicial branches?
RESPONSE
With respect to your first question, although the law obligates the board to publish its budget, the language obligating the board to publish "a rate of tax levy sufficient to provide the funds therefore" applies only to the millage devoted to maintenance and operation of schools and the retirement of indebtedness. There is no requirement that the board publish the source of funds to finance other expenditures set forth in the budget. In my opinion, the answer to your second question is "no." The proposed notice attached to your request violates Amendment 74 in that it does not call for sufficient mills to meet the uniform rate of tax. In the wake of Lake View School District v. Huckabee, 351 Ark. 31,91 S.W.3d 472 (2002), it is impermissible to credit against the uniform rate of tax the mills devoted to debt service to retire existing bonded indebtedness. I believe the answer to your third question is "no." The statutory reference to a "modification" is to an upward adjustment of the millage to impose the uniform rate of tax — a condition not met by your proposed notice. In my opinion, the answer to your fourth question is "no." The proposed ballot is constitutionally defective for the reasons set forth above. In my opinion, the answer to your fifth question is "yes," unless the approved millage fails to meet the uniform rate of tax, in which case the quorum court should levy the required minimum millage. Ark. Const. amend. 74, § (b)(3). I believe the answer to your sixth question is likewise "yes." A.C.A. § 6-20-808(c). With respect to your seventh question, I believe that Amendment 74 and A.C.A. §26-80-101(a) directly levy the uniform rate of tax, notwithstanding the fact that A.C.A. § 6-14-114(4)(D) requires the tax to be listed on the annual school election ballot. If the Gentry School District is crediting excess debt service against the uniform rate of tax, I believe the district is out of compliance with Amendment 74. With respect to your eighth question, Ark. Const. art. 14, § 3 has been superseded by Amendment 74, which levies the uniform rate of tax and authorizes district voters to levy taxes over and above the uniform rate of tax for maintenance and operation of schools and for debt service. However, the legislature retains authority to reduce these taxes if doing so is necessary to keep the district or the state in compliance with applicable law. Again, excess debt services millages may not be counted as a credit against the uniform rate of tax.
Question 1: Do provisions of ACA 6-13-620(7) and 26-80-102 charge publicschool board members with preparing and publishing a school district'sbudget "together with a rate of tax levy sufficient to provide the fundstherefor"?
Subsection 6-13-620(7) of the Arkansas Code (Supp. 2001) charges the board of directors of each school district with the duty to "[p]repare and publish the district's budget for the ensuing year, in accordance with § 6-13-622." Section 6-13-622 (Repl. 1999) requires each school district to publish its budget in a locally available newspaper at least 60 days before the annual school election. Section 26-80-102(a) (Repl. 1997) provides in pertinent part:
 In addition to the uniform rate of tax as provided in § 26-80-101, school districts are authorized to levy, by a vote of the qualified electors respectively thereof, an annual ad valorem property tax on the assessed value of taxable real, personal, and utility property for the maintenance and operation of schools and the retirement of indebtedness. The board of directors of each school district shall prepare, approve and make public not less than sixty (60) days in advance of the annual school election a proposed budget of expenditures deemed necessary to provide for the foregoing purposes, together with a rate of tax levy sufficient to provide the funds therefor, including the rate under any continuing levy for the retirement of indebtedness.
The board of directors shall submit the tax at the annual school election or at such other time as may be provided by law.
(Emphasis added.) The highlighted language tracks verbatim language contained in Ark. Const. amend. 74(c)(1).
Both Amendment 74 and the statute just quoted require that the board publish "a rate of tax levy sufficient to provide the funds" for "the foregoing purposes." The recited language is somewhat ambiguous in that it would allow for debate as to whether the term "foregoing purposes" refers only to the locally imposed millage over and above the uniform rate of tax, in which case only the local millage would need to be published, or whether the term includes both the uniform rate of tax and the local millage. In my opinion, the latter reading is far more persuasive. The Arkansas courts have long held that in interpreting statutory language, it is inappropriate to give the statute a reading that would result in an absurdity, or to presume that the legislature enacted a vain and meaningless law. See Yarbrough v. Witty,336 Ark. 479, 484, 987 S.W.2d 257(1999); Lawhon Farm Servs. v. Brown,335 Ark. 272, 948 S.W.2d 1 (1998); Citizens To Establish A Reform Party v.Priest, 325 Ark. 257, 926 S.W.2d 432 (1996); Henson v. Fleet MortgageCo., 319 Ark. 491, 892 S.W.2d 250 (1995); Neely v. State, 317 Ark. 312,877 S.W.2d 589 (1994); Death and Total Permanent Disability Trust Fundv. Whirlpool Corp., 39 Ark. App. 62, 837 S.W.2d 293 (1992). I believe it would be absurd for a school district to publish and break down by use the local levy devoted to maintenance and operations while not publishing and breaking down by use the state levy devoted to the same purpose. I am reinforced in this conclusion by the fact that school districts uniformly include both in their budgets.
I am enclosing for your information a copy of Ark. Op. Att'y Gen. No.2003-089, in which I discuss the uncertainty under current law regarding what precisely constitutes "maintenance and operation of schools." Whatever might be the scope of that term, nothing in either A.C.A. §6-13-620(7) or in A.C.A. § 6-13-622 mandates that the funding source for expenditures other than maintenance and operation of schools and debt service be set forth in the published budget. My review of the sample budget forms posted on the Department of Education's web site,http://arkedu.state.ar.us//pdf/sample_budget.pdf, confirms that recommended proposed budgets report only the proposed tax mills for maintenance and operation of schools, dedicated maintenance and operation and debt service.
Question 2: Does the wording in the attached annual school electionnotice for the Gentry School District, as required by Amendment 40 of theArkansas State Constitution, A.C.A. 6-13-622 and A.C.A. 26-80-102,provide sufficient notice to the school district's electors that therequired uniform rate of tax is included in the total 35 millsrequested?
I should note initially that Amendment 40 has been superseded by Ark. Const. amend. 74. Although the provision does not appear in the text of Amendment 74 as codified, section 1 of the ballot setting forth the proposed amendment read: "Section 3 of Article 14 of the Arkansas Constitution, as amended by Amendments 11 and 40[,] is amended to read as follows. . . ." In my opinion, this language is unequivocal in declaring that Article 14, § 3 and Amendments 11 and 40 have been replaced by Amendment 74.
The school election notice attached to your request reads as follows:
35.0 MILLS SCHOOL TAX
 This represents no change from the previous year. The total tax levy of 35.0 mills proposed above includes the calculated Uniform Rate of Tax required under Amendment 74, 15.9 mills for maintenance and operation of schools, 2.9 mills for dedicated maintenance and operation millage (Capital Outlay/Current Expenditures) dedicated for purposes of technology, school buses, and refurbishing, remodeling, and equipping existing school facilities, and other purposes established by law, and 16.2 mills for debt service previously voted as a continuing debt service tax and pledged for the retirement of existing bonded indebtedness. The District may use surplus revenues produced each year by debt service millage for other school purposes.
In my opinion, this notice is misleading in suggesting that the proposed 35 mills "includes the calculated Uniform Rate of Tax required under Amendment 74."
Amendment 74 of the Arkansas Constitution provides in pertinent part:
 (b)(1) There is established a uniform rate of ad valorem property tax of twenty-five (25) mills to be levied on the assessed value of all taxable real, personal, and utility property in the state to be used solely for maintenance and operation of the schools.
 (2) Except as provided in this subsection the uniform rate of tax shall not be an additional levy for maintenance and operation of the schools but shall replace a portion of the existing rate of tax levied by each school district available for maintenance and operation of schools in the school district. The rate of tax available for maintenance and operation levied by each school district on the effective date of this amendment shall be reduced to reflect the levy of the uniform rate of tax. If the rate of tax available for maintenance and operation levied by a school district on the effective date of this amendment exceeds the uniform rate of tax, the excess rate of tax shall continue to be levied by the school district until changed as provided in subsection (c)(1). If the rate of tax available for maintenance and operation levied by a school district on the effective date of this amendment is less than the uniform rate of tax, the uniform rate of tax shall nevertheless be levied in the district.
The legislation enabling the above constitutional provisions is Acts, 1997, No. 1300, § 3, codified at A.C.A. § 26-80-204(18) (Supp. 2001), which provides:
 "Uniform rate of tax" means a uniform rate of ad valorem property tax of twenty-five (25) mills to be levied on the assessed value of all taxable real, personal, and utility property in the state to be used solely for maintenance and operation of the schools. In calculating the uniform rate of tax imposed by Arkansas Constitution, Article 14, § 3, as amended by Arkansas Constitution, Amendments 11, 40, and 74, the following categories of millage may be utilized to meet the minimum millage requirement:
(A) The local school district's maintenance and operation millage;
(B) The dedicated maintenance and operation millage;[1]
(C) Excess debt service millage;[2] and
 (D) The millage derived from the ratio of the debt service funding supplements[3] divided by the total assessment.
In Lake View School District v. Huckabee, 351 Ark. 31, 89, 91 S.W.3d 472
(2002), the court held that subsection (C) of this statute is unconstitutional in providing "that part of a millage adopted by the school district for an entirely different purpose [viz., servicing debt that may or may not have been incurred to fund maintenance and operation of the schools] may be subtracted from the 25 mills owed" pursuant to the uniform rate of tax. 351 Ark. at 89. In the wake of Lake View, it is apparent that the 16.2 mills recited in the notice recited above cannot be counted toward the 25-mill uniform rate of tax. Although I concluded in the attached Ark. Op. Att'y Gen. No. 2003-089 that a millage for dedicated maintenance and operation of schools can be included, the combined millage in this category and in regular maintenance and operation totals only 18.8 mills, which falls below the minimum required under Amendment 74.
Question 3: Does the wording constitute a "modification" as stipulated inA.C.A. 26-80-102(a) when it states "However, if the rate approved hasbeen modified pursuant to the uniform rate of tax calculated by the StateDepartment of Education, then the tax shall be collected at the modifiedrate until another rate is approved"?
Although I am uncertain precisely what you mean by this question, I will set forth the constitutional and statutory standard regarding "modification" of the local millage.
The language you have quoted from A.C.A. § 26-80-102(a) closely tracks the following from Ark. Const. amend. 74(c)(1), which authorizes the levying of local mills for maintenance and operations and debt service over and above the uniform rate of tax:
 However, if the rate last approved has been modified pursuant to subsection (b) or (c)(2) of this section, then the tax shall be collected at the modified rate until another rate is approved.
Section (b) of Amendment 74, which is quoted in pertinent part in my response to your first question, provides that if a district's local millage is insufficient to meet the uniform rate of tax, "the uniform rate of tax shall nevertheless be levied in the district."[4] In my opinion, this language is unequivocal in declaring that regardless of what millage the voters may have approved, the quorum court is obligated to levy at least the uniform rate of tax. Accordingly, when the voters impose an insufficient levy, as would be the case if they approved the millage set forth in your proposed notice, the rate will be automatically "modified" by operation of law to comply with the uniform rate of tax. As previously noted, the proposed notice attached to your request is constitutionally deficient in that it purports to include the uniform rate of tax in the figures recited but in fact calls for only 18.8 of the 25 mills Amendment 74 requires. The proposed notice might consequently be characterized as constituting a "modification" only insofar as it acknowledges, as do A.C.A. § 26-80-102(a) and Amendment 74, the replacement of certain local mills by the state uniform rate of tax.
Question 4: Does the same wording on the ballot allow the voters toapprove the existing total 35 mills to include the uniform rate of tax?
No. As previously noted, the millages recited in the proposed notice that might be credited against the uniform rate of tax do not add up to 25 mills, as Amendment 74 requires.
Question 5: If a majority of the qualified voters in the school districtvoting in the school election approve the rate of tax proposed by theboard of directors, then shall the tax at the rate approved be collectedas provided by law?
Yes, unless the approved millage fails to meet the uniform rate of tax, in which case the quorum court should levy the constitutionally mandated millage. Subsection 6-14-114(4)(D) of the Code requires a vote by school district electors at the regularly scheduled annual election on "[t]he total millage rate levied for all purposes in the school district" — a figure that includes the uniform rate of tax. Subsection (b)(3) of Amendment 74 provides, in pertinent part, that "[t]he uniform rate of tax shall be assessed and collected in the same manner as other school property taxes."
Question 6: Does A.C.A. 6-20-808 allow for surplus revenue generated bydebt service mills but in excess of the amount required to make theannual debt payment to be used in the district's general operating fund?
Yes. Subsection 6-20-808(c) of the Code (Repl. 1999) expressly provides that any annual surplus ad valorem property tax revenues pledged but not needed to service a revolving loan may be "transferred by the county treasurer or school district treasurer to the district's general operating fund."[5] However, even if such relocated funds are eventually used for maintenance and operations, I do not believe such revenues may be credited against the uniform rate of tax. As reflected in the attached Ark. Op. Att'y Gen. No. 2003-089, in the wake of Lake View it is unclear whether even debt service mills for revolving loans irrevocably dedicated to maintenance and operations may be credited against the uniform rate of tax. In my opinion, there is no material difference between the excess debt service mills and excess mills not needed to service a revolving loan. Perhaps because excess debt service mills may be used for a variety of purposes other than maintenance and operations, the court in LakeView expressly declared that they could not be credited against the uniform rate of tax. 351 Ark. at 89. In my opinion, the court would draw this same conclusion with respect to excess mills not needed to service a revolving loan.
Question 7: Does the fact that the revenue in the amount that the uniformrate of tax's 25 mills would generate was submitted in accordance withAmendment 74, Section 1, "(3) The uniform rate of tax shall be assessedand collected in the same manner as other school property taxes, but thenet revenues from the uniform rate of tax shall be remitted to the StateTreasurer and distributed by the state to the school districts asprovided by law," mean that the uniform rate of tax has been levied in theGentry School District?
Although this question is somewhat confusing, I assume you are asking whether submitting 25 mills worth of revenues to the state and characterizing those revenues as generated by the uniform rate of tax would meet the requirements of Amendment 74 even though the source of those revenues was a millage other than one specifically designated as includable in that category. In addressing this question, I should perhaps stress again that the uniform rate of tax is a state, not a local, levy imposed by Amendment 74 itself. There consequently appears to be a logical contradiction in the statutory requirement that the tax, however designated, be submitted to the voters for "approval" in the first place. A.C.A. § 6-14-114(4)(D). To this extent, it would appear to be immaterial how the tax is characterized on the ballot, so long as it is paid and properly dedicated to maintenance and operation of schools.
As I noted in the attached Ark. Op. Att'y Gen. No. 2003-031, this constitutional levy "is implicitly a charge to county officials, in the exercise of their constitutional duties as defined in Amendment 74, to compute and to levy a 25-mill property tax" to be devoted to maintenance and operation of schools. I elaborated on this conclusion as follows:
 Subsection (b)(1) of Amendment 74 bluntly declares that "[t]here is
established a uniform rate of ad valorem property tax of twenty-five mills" (emphasis added) — a pronouncement echoed verbatim at A.C.A. § 26-80-101(a). I have emphasized the verb in this language to stress that the voters, in adopting Amendment 74, themselves actually imposed the levy as a matter of constitutional law, leaving it up to county officials only to undertake such actions as are necessary to collect the amounts levied. Subsection (b)(3) of Amendment 74 and A.C.A. § 26-80-101(b) further dictate that "[t]he uniform rate of tax shall be assessed and collected in the same manner as other school property taxes" — i.e., by action of the collector following levy by the quorum court. See A.C.A. § 14-14-904(b).
 I am aware of the fact that A.C.A. § 6-14-114(4)(D) (Repl 1999) currently provides for periodic voter approval of "[t]he total millage rate levied for all purposes in the school district" — a requirement that appears inconsistent with the proposition that Amendment 74 in itself levied the uniform rate of tax. I am also aware of the fact that, in accordance with this statute, the uniform rate of tax is normally submitted to the school district voters for their approval. See also Lake View, 351 Ark. at 89 (stating in dictum that "each school district is responsible for assessing [sic: `levying'] a uniform rate of 25 mills for maintenance-and-operation purposes"). However, to the extent this statute suggests that the voters could decline to levy the uniform rate of tax, I believe the statute is constitutionally suspect, since the voters have already levied the tax as a matter of constitutional law in adopting Amendment 74.
In a footnote to this passage, I observed:
 My inquiries reveal that immediately after the adoption of Amendment 74, the quorum courts in seven Arkansas counties — Carroll, Craighead, Hempstead, Madison, Scott, Searcy and Independence — levied the uniform rate of tax without even submitting the matter to school district voters. In my opinion, such actions by the quorum courts are fully consistent with the mandate set forth in Amendment 74.
In short, notwithstanding the fact that school district voters are obliged to vote on the issue, I believe the uniform rate of tax has already been levied in the Gentry School District, imposing on local officials the obligation to collect the tax as provided by law. Assuming county officials fulfill this obligation, a court might conclude that the county had complied with Amendment 74.
Notwithstanding what I consider the logic of this conclusion, the court in Lake View held one category of tax — excess debt service millage — unavailable as a component of the uniform rate of tax regardless of whether the millage is in fact used to maintain and to operate schools. Perhaps to avoid any potential diversion of tax proceeds, the court may have concluded that the uniform rate of tax consists only of certain millages inexorably devoted to the purpose of maintenance and operations, not to millages that are in fact used for that purpose but that might have been used for another. If so, a district that submits some other variety of millage revenue to the Treasury as arising from the uniform rate of tax may be deemed technically out of compliance with Amendment 74 even though the act of submitting the revenues would appear to pledge them irrevocably to maintenance and operations.
In short, the supreme court appears to have declared that the uniform rate of tax, even though constitutionally mandated, must be presented to the voters and that its component millages must be restricted to those recited in the Arkansas Constitution, the Code and the court's own pronouncements on the issue, regardless of whether the district in fact tenders 25 mills worth of revenue to the state. Specifically in response to your question, then, I believe it would be constitutionally sufficient to submit "revenue in the amount that the uniform rate of tax's 25 mills would generate" only if those revenues were generated by approved millages.
Question 8: If the answers to the above questions are "yes," does thevote of the electors as allowed by Article 14 of the ArkansasConstitution, when it says "If a majority of the qualified voters in saidschool district voting in the annual school election shall approve therate of tax so proposed by the Board of Directors, then the tax at therate so approved shall be collected as provided by law," supercede [sic]the authority invested by the Arkansas Constitution to the legislative,executive and judicial branches?
As noted above, Ark. Const. art. 14, § 3, which contains the language quoted in your question, has been totally superseded by Ark. Const. amend. 74, which itself levies a 25-mill tax for maintenance and operation of schools and which authorizes district voters to levy additional mills for the same purpose and debt service. The court in LakeView unequivocally declared that excess debt service mills could not be credited against the uniform rate of tax, regardless of whether these mills are eventually devoted to maintenance and operations.351 Ark. at 89. With respect to the voters' option of levying additional mills, subsection (c)(2) of Amendment 74 provides that the tax levied might be reduced if the tax "would cause the state or district to be out of compliance with any other provision of this Constitution, the United States Constitution, state or federal law, or court order." I am unclear precisely what you mean by "the authority invested by the Arkansas Constitution to the legislative, executive and judicial branches," but I will opine that Amendment 74 would supersede any previously adopted constitutional provisions in conflict therewith.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
Enclosures
[1] I discuss at length the scope of this term in the attached Ark. Op. Att'y Gen. No. 2003-089.
[2] Subsection 26-80-204(6) of the Code defines the term "debt service millage" as follows:
 "Debt service millage" means the total number of mills voted by the electors of a school district to be pledged as security for the retirement of bonded indebtedness.
Subsection (9) of this statute defines the term "excess debt service millage" as follows:
 "Excess debt service millage" means the difference between the debt service millage levied and the debt service millage required. This amount shall be presumed to be available for maintenance and operation but may be used for other school purposes, provided that the district is in compliance with the uniform rate of tax.
Subsection (7) defines the term "debt service millage required" as follows:
 "Debt service millage required" means the calculated millage rate equal to the amount of millage pledged to mandatory callable bonds plus the result of the scheduled calendar year bonded debt payment divided by the total assessed value of real, personal, and utility property in the local school district.
[3] Subsection 26-80-204(5) defines the term "debt service funding supplements" in pertinent part as follows:
 "Debt service funding supplements" means the state financial aid provided to qualifying local school districts for the purpose of reducing existing debt service burdens and increasing the amount of local revenue available for maintenance and operation expenditures. . . .
[4] Subsection (c)(2), which does not appear to be implicated in your question, provides for a downward modification by the legislature under appropriate circumstances:
 The tax levied by a school district pursuant to subsection (c)(1) of this section may be reduced pursuant to procedures provided by law if the tax would cause the state or district to be out of compliance with any other provision of this Constitution, the United States Constitution, state or federal law, or court order.
[5] The various purposes to which a revolving loan might be put are set forth at A.C.A. §§ 6-20-802 and 26-80-110(b). I have discussed at length in Ark. Op. Att'y Gen. No. 2003-089 whether such uses might be categorized as "maintenance and operations."