Ms. Deborah L. Frazier, Director Arkansas Health Services Permit Agency 5800 W. 10th, Suite 805 Little Rock, AR 72204
Dear Ms. Frazier:
You have presented the following questions for my opinion:
 Does Act 166 of 2003 exempt the Fayetteville nursing home that would be funded by that Act from the requirement of obtaining a Permit of Approval for constructing the nursing home?
RESPONSE
It is my opinion that Act 166 indicates that a Permit of Approval need not be obtained for the nursing home for which the act provides funding.
Act 166 states in full:
 For An Act To Be Entitled AN ACT TO MAKE AN APPROPRIATION TO THE DEPARTMENT OF VETERANS' AFFAIRS FOR THE FAYETTEVILLE VETERANS' HOME; AND FOR OTHER PURPOSES.
 Subtitle AN ACT FOR THE DEPARTMENT OF VETERANS' AFFAIRS — FAYETTEVILLE VETERANS' HOME GENERAL IMPROVEMENT APPROPRIATION.
BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:
 SECTION 1. APPROPRIATIONS — FAYETTEVILLE VETERANS' HOME. There is hereby appropriated, to the Department of Veterans' Affairs, to be payable from the General Improvement Fund or its successor fund or fund accounts, the following:
 (A) For Construction of the Fayetteville Veterans' Home, the sum of ................................ $2,400,000.
 SECTION 2. APPROPRIATIONS — FAYETTEVILLE VETERANS' HOME. There is hereby appropriated, to the Department of Veterans' Affairs, to be payable from the federal funds as designated by the Chief Fiscal Officer of the State, the following:
 (A) For Construction of the Fayetteville Veterans' Home, the sum of ................................. $4,500,000.
 SECTION 3. DISBURSEMENT CONTROLS. (A) No contract may be awarded nor obligations otherwise incurred in relation to the project or projects described herein in excess of the State Treasury funds actually available therefor as provided by law. Provided, however, that institutions and agencies listed herein shall have the authority to accept and use grants and donations including Federal funds, and to use its unobligated cash income or funds, or both available to it, for the purpose of supplementing the State Treasury funds for financing the entire costs of the project or projects enumerated herein. Provided further, that the appropriations and funds otherwise provided by the General Assembly for Maintenance and General Operations of the agency or institutions receiving appropriation herein shall not be used for any of the purposes as appropriated in this act.
 (B) The restrictions of any applicable provisions of the State Purchasing Law, the General Accounting and Budgetary Procedures Law, the Revenue Stabilization Law and any other applicable fiscal control laws of this State and regulations promulgated by the Department of Finance and Administration, as authorized by law, shall be strictly complied with in disbursement of any funds provided by this act unless specifically provided otherwise by law.
 SECTION 4. LEGISLATIVE INTENT. It is the intent of the General Assembly that any funds disbursed under the authority of the appropriations contained in this act shall be in compliance with the stated reasons for which this act was adopted, as evidenced by the Agency Requests, Executive Recommendations and Legislative Recommendations contained in the budget manuals prepared by the Department of Finance and Administration, letters, or summarized oral testimony in the official minutes of the Arkansas Legislative Council or Joint Budget Committee which relate to its passage and adoption.
 SECTION 5. EMERGENCY CLAUSE. It is found and determined by the General Assembly, that the Constitution of the State of Arkansas prohibits the appropriation of funds for more than a two (2) year period; that the effectiveness of this Act on July 1, 2003 is essential to the operation of the agency for which the appropriations in this Act are provided, and that in the event of an extension of the Regular Session, the delay in the effective date of this Act beyond July 1, 2003 could work irreparable harm upon the proper administration and provision of essential governmental programs. Therefore, an emergency is hereby declared to exist and this Act being necessary for the immediate preservation of the public peace, health and safety shall be in full force and effect from and after July 1, 2003.
APPROVED: February 18, 2003
Acts 2003, No. 166. See also Acts 2003, No. 43 (1st Ex. Sess.) (reaffirming Act 166's appropriation of state funds).
Under normal circumstances, the construction of a nursing home cannot be undertaken unless a Permit of Approval is obtained from the Arkansas Health Services Permit Commission. See A.C.A. § 20-8-103, -107. It appears that the "Veterans' Home" for which Act 166 provided funding is a facility that normally would be subject to the permit requirement. It is my opinion that although the General Assembly has granted the Arkansas Health Services Permit Commission the authority to determine, under usual circumstances, whether a new facility should be constructed, the General Assembly expressed an intent in Act 166 to bypass the Commission with regard to the Veterans' Home for which it appropriated funding in Act 166. I base this conclusion on two principles of statutory interpretation. The first is the principle that if two acts address the same subject and one is more specific than the other, the more specific act should govern. See Raley v. Wagner, 346 Ark. 234, 57 S.W.3d 683
(2001); Ozark Gas Pipeline v. Public Ser. Comm., 342 Ark. 591,29 S.W.3d 730 (2000). Both Act 166 and the statutes that govern the Arkansas Health Services Permit Commission address the issue of how a determination is to be made as to whether a new nursing home should be constructed. With regard to this issue, Act 166 is very specific. Although an appropriation is an authorization to spend, rather than a mandate to spend, it is nevertheless clear that by appropriating 6.9 million dollars for the express purpose of constructing a nursing home in Fayetteville, the General Assembly unquestionably indicated a specific intent that such a nursing home should be constructed. In contrast, the statutes governing the Health Services Permit Commission are general and do not apply to any particular nursing home. Because Act 166 is more specific than the statutes governing the Health Services Commission, Act 166 should govern. The second applicable principle of statutory interpretation is the principle that legislation should be interpreted in such a way as to avoid rendering the legislation vain or meaningless and so as to avoid absurd results. See Fountain v. State, 348 Ark. 359, 72 S.W.3d 511
(2002); Yarbrough v. Witty, 336 Ark. 479, 484, 987 S.W.2d 257(1999);Lawhon Farm Servs. v. Brown, 335 Ark. 272, 948 S.W.2d 1 (1998); CitizensTo Establish A Reform Party v. Priest, 325 Ark. 257, 926 S.W.2d 432
(1996); Henson v. Fleet Mortgage Co., 319 Ark. 491, 892 S.W.2d 250
(1995); Neely v. State, 317 Ark. 312, 877 S.W.2d 589 (1994); Death andTotal Permanent Disability Trust Fund v. Whirlpool Corp.,39 Ark. App. 62, 837 S.W.2d 293 (1992). The intent reflected by the General Assembly's appropriation of 6.9 million dollars for the construction of a nursing home in Fayetteville would be substantially undermined if the Health Services Permit Commission had the power to deny a Permit of Approval for that nursing home. It would be implausible to argue that the General Assembly intended that its express purpose be so easily thwarted.
My conclusion regarding this matter is bolstered by certain similar history. In 1985, the General Assembly provided for and appropriated funds for the conversion of a certain facility into a nursing home for veterans. See Acts 1985, Nos. 578, 432, and 175. When questions were later raised about whether a Certificate of Need (the predecessor to the Permit of Approval) was required, the General Assembly enactedAct 157 of 1987, which included the following statement:
 SECTION 1. The General Assembly intended, through Act 432 of 1985, Act 578 of 1985 and Act 175 of 1985, to provide for the conversion of the Arkansas Veterans Home to a nursing home and domiciliary for veterans without the necessity of obtaining a certificate of need. However, there still appears to be confusion regarding whether the Veterans Home must obtain a certificate of need in order to convert to a nursing home, and it is the intent of the General Assembly through this Act to make more clear its intent to authorize and direct the conversion of the Arkansas Veterans Home to a nursing home and domiciliary without obtaining a certificate of need. Therefore, this Act shall be interpreted and construed in whatever manner necessary to provide for the conversion without obtaining a certificate of need.
Acts 1987, No. 157.
I believe that Act 166 similarly reflects the General Assembly's intent to provide funding for the construction of a nursing home without the necessity of obtaining a Permit of Approval.
For these reasons, I conclude that the General Assembly has clearly expressed an intent that a nursing home be constructed in Fayetteville using the funds appropriated by Act 166, and that a Permit of Approval not be required for the construction of that nursing home.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General