Glenna Butler, Chair Arkansas Towing and Recovery Board P.O. Box 8285 Searcy, AR 72145
Dear Ms. Butler:
I am writing in response to your request for my opinion on the following question:
 Is notification to the last registered owner(s) and leinholder(s) [sic] of record required for each law enforcement agency ordered non-consent tow?
RESPONSE
In my opinion, the answer to this question appears to be "yes." In order for a towing firm to perfect its possessory lien in a vehicle that qualifies as "unattended" or "abandoned" as defined in A.C.A. §27-50-1202 and that has been ordered towed by a law enforcement officer, the Code requires actual notice of the towing. A.C.A. § 27-50-208. Moreover, in order to foreclose that perfected possessory lien, the towing firm must further provide actual notice of the proposed auction of the vehicle. A.C.A. § 27-50-209. Although no provision of the Code expressly requires notice of towing except as a condition precedent to perfecting and foreclosing a possessory lien, I believe the legislature intended to impose upon towing firms an obligation to observe the notice requirements that would lead either to redemption of towed vehicles by their owners or lienholders or sale of the vehicles at auction. No provision of the Code addresses if or how a towing firm might perfect its possessory lien in a vehicle ordered towed by a law enforcement officer when it is impossible to give actual notice. Legislative clarification appears warranted.
Subchapter 12 of chapter 50 of title 27 of the Arkansas Code (Repl. 1994 Supp. 2003) includes the procedures to be observed when a law enforcement officer orders a nonconsensual tow of an "unattended" or "abandoned" vehicle. Subsection 27-50-1202(10) defines "unattended" vehicles as comprising the following: vehicles left unattended on public property without consent for more than two days; vehicles within three feet of a "public way"; vehicles "on or near a public way" at a distance of "three feet (3') or more of the traveled surface of the public way" for more than a day; vehicles left unattended because of accidents; vehicles impounded by the police incident to arrest; vehicles "located upon any public right of way" that police determine constitute hazards; and vehicles located anywhere that are subject to police seizure "under the Arkansas Rules of Criminal Procedure or pursuant to lawful court order." Subsection 27-50-1202(1) further offers the following definition of "abandoned":
 (1) "Abandoned" means any vehicle deemed to be unattended as defined in this section; and
 (A) As to which the owner has overtly manifested some intention not to retake possession; or
 (B) Which remains unattended, whether in its first-found location or in another location to which it has been removed pursuant to this subchapter, for a period of thirty (30) days, during which period the owner has given no evidence of an intent to retake possession[.]
As these definitions suggest, most, but not all, "unattended" and "abandoned" vehicles under subchapter 12 will be towed from on or near public property.
The legislature has imposed certain statutory responsibilities on both the law enforcement officer directing the towing and the towing and storage firm selected to remove the vehicle pursuant to subchapter 12. With respect to these duties, A.C.A. § 27-50-1206 provides:
 (a) Any order issued by a law enforcement officer to a licensed towing and storage firm to remove and store an unattended or abandoned vehicle shall provide information supplied from the records of the Office of Motor Vehicle, Arkansas Crime Information Center records or the motor vehicle records of any other state indicating the name and address of the last registered owner, the name and address of the holder of any recorded lien on the vehicle, and the vehicle identification or serial number of the vehicle. If there is evidence in the vehicle indicating that the vehicle is registered in another state, the information shall be supplied from the motor vehicle records of that state.
 (b)(1) In the event that readily available records fail to disclose the name of the owner or any lienholder of record, the law enforcement officer or his or her agency shall notify the towing and storage firm, which shall perform a good faith search to locate documents or other evidence of ownership and lienholder information on or within the unattended or abandoned vehicle.
 (2) For purposes of this subsection, a "good faith search" means that the towing and storage firm checks the unattended or abandoned property for any type of license plate, license plate record, temporary permit, inspection sticker, decal, or other evidence which may indicate a possible state of registration and title.
 (3) The towing and storage firm shall provide to the law enforcement officer or agency the results of the search and, if appropriate, certify that a physical search of the unattended or abandoned vehicle disclosed that no ownership documents were found and that a good faith search was conducted.
 (c) Within not more than twenty-four (24) hours from the order to remove, the officer involved or his or her agency shall contact the towing and storage firm advising of any unusual circumstances causing the delay of required information that was not available to the officer at the time the order to remove was issued. The officer or agency shall provide the delayed information immediately upon receipt.
 (d) When a vehicle is removed pursuant to this subchapter by law enforcement and is subject to impoundment or seizure pursuant to police power or any lawful order of court, the law enforcement officer shall provide to the towing and storage firm a written statement setting forth the conditions of release of the vehicle.
The intent underlying this statute appears to be to ensure that all reasonable efforts will be made as quickly as possible to gather the information that the towing and storage firm needs to inform the last registered owner and any lienholders of record where the vehicle is being stored and what they must do in order to assert an interest in its disposition. However, this particular statute (A.C.A. § 27-50-1206) does not mention or impose any notice requirement.
Section 27-50-1208 of the Code addresses the issue of notice, providing in pertinent part:
 (a) The towing and storage firm shall have a first priority possessory lien on the vehicle and its contents for all reasonable charges for towing, recovery, and storage for which the owner is liable.
(b) The lien shall be perfected by:
(1) Maintaining possession; and
 (2) Giving notice to the owner or owners and lienholders as shown on the data provided by the law enforcement agency involved as prescribed by this subchapter.
 (c) The notice shall be by certified mail, return receipt requested, and shall be posted not sooner than two (2) business days, but within eight (8) business days after the date the towing and storage firm receives ownership and lienholder information from the law enforcement agency as prescribed by this subchapter.
(d) The notice shall contain the following information:
 (1) The year, make, model, and vehicle identification number of the vehicle towed;
(2) The name, address, and telephone number of the storage facility;
 (3) That the vehicle is in the possession of that towing and storage firm under police order, describing the general circumstances of any law enforcement or other official hold on the vehicle;
 (4) That towing, storage, and administrative costs are accruing as a legal liability of the owner;
 (5) That the towing and storage firm claims a first priority possessory lien on the vehicle and its contents for all of such charges;
 (6) That unless claimed within forty-five (45) days, the vehicle will be dismantled, destroyed, or sold at public sale to the highest bidder.
 (7) That the failure to exercise their right to reclaim the vehicle and its contents within the time prescribed by this section constitutes a waiver by the owners and lienholders of all right, title, and interest in the vehicle and its contents and constitutes their consent to the sale, dismantling or destruction of the vehicle and its contents;
 (8) That the owner or lienholder may retake possession at any time during business hours by appearing, proving ownership, and release of law enforcement or other official hold, if any, and paying all charges or other written arrangement between the owner or lienholder and the towing and storage firm; and
 (9) That, should the owner consider that the original taking was not legally justified, he or she has a right for twenty (20) days to contest the original taking as defined by § 27-50-1207.
On its face, this statute contains no provision requiring notice for any purpose other than to perfect the towing firm's possessory lien. Subsection (c) of this statute merely provides that in order to perfect its lien, the towing firm must provide the specified notice between two and eight days from the time it receives "ownership and lienholder information from the law enforcement agency" that ordered the towing. The statute is silent on the required timing of notice in the event the law enforcement agency is unable to supply this information.
Section 27-50-1209 of the Code further sets forth the notice required for a towing firm to foreclose its perfected security interest in a towed vehicle in the event an owner or lienholder does not assert an interest in disposition of the vehicle in timely fashion:
 (a) The failure of the owner or lienholder to exercise his, her, or its right to reclaim the vehicle and its contents within the time provided in this subchapter constitutes a waiver by the owner or lienholder of all right, title, and interest in the vehicle and its contents.
 (b)(1) The towing and storage firm holding a perfected possessory lien on any vehicle and its contents not redeemed by its owner or security lienholder within the forty-five (45) days provided by this subchapter shall sell the vehicle and its contents at a nonjudicial sale for cash.
 (2) The sale shall not occur later than ninety (90) days after perfection of the lien.
 (c)(1) The towing and storage firm shall obtain written verification that the Arkansas Crime Information Center records do not list the vehicle as having been reported stolen.
 (2) The verification shall be on a form prescribed by the Office of Motor Vehicle, a municipal police department, a county sheriff's department, or the Department of Arkansas State Police.
 (d) Notice of the sale shall be sent at least fifteen (15) days before the date of the sale by certified mail, no return receipt requested, to the registered owner and lienholder, if any.
 (e) In addition to the notice by mail, notice of the sale shall be published in a newspaper of general circulation in the county at least once, at least ten (10) days prior to the sale.
Just as A.C.A. § 27-50-1208 deals only with the early notice required to perfect a towing firm's possessory security interest, A.C.A. § 27-50-1209
deals only with the later notice required for the towing firm to foreclose that perfected interest. The latter statute, unlike the former, requires not only actual notice but also constructive notice by publication. Neither statute, nor any other provision of subchapter 12 of chapter 50 of title 27, expressly requires a towing firm to notify the owner of and lienholders on a vehicle for any purpose other than to perfect or foreclose a possessory lien.
However, I strongly question whether the legislature intended to invest a towing firm with discretion either to perfect its lien in timely fashion by providing notice or, for whatever reason, to refrain from doing so. In this regard, I am struck by the terms of A.C.A. § 27-50-1209(a), which provides that if a lienholder fails to reclaim the vehicle "within the time provided in this subchapter," he or she will have waived "all right, title, and interest in the vehicle and its contents." This statute appears to assume that the owner or lienholder will have received notice of the towing, which raises the question whether the notices referenced in A.C.A. §§ 27-50-1208 and -1209 are obligatory, notwithstanding the fact that they are couched in terms of the towing firm's rights as a possessory lienholder. Subsection 27-50-1209(b)(1) reinforces this impression in providing that "[t]he towing and storage firm holding a perfected possessory lien on a vehicle" not redeemed within the prescribed time "shall sell the vehicle and its contents at a nonjudicial sale for cash." The Code clearly contemplates the nonjudicial sale of a vehicle that has not been properly redeemed. Moreover, A.C.A. § 27-50-1210(c)(1) authorizes the Office of Motor Vehicle to issue a new, unencumbered title to a purchaser at such a sale only upon receiving documentation that the towing firm has complied with all procedural requirements, including actual notice to the registered owner and, if any, to lienholders. The Code is utterly silent on the question of what rights an owner or lienholder might have if a towing firm fails to perfect its possessory interest by providing the prescribed notice. The Code is likewise silent on the question of what will happen to a vehicle if it is neither redeemed after notice or sold at auction by the holder of a perfected possessory lien. The Code's silence on these points suggests that the notice requirements set forth in A.C.A. §§ 27-50-1208 and -1209 are indeed obligatory, with the references to the effects of such notice on the towing firm's lien being merely descriptive of the legal consequences of observing the law.
In my opinion, to read the law otherwise would lead to absurd results. For instance, it would permit an owner or lienholder potentially to lose his or her interest in a vehicle without notice of its ever having been towed. It would further leave in limbo any vehicle towed by a firm that had elected not to perfect its interest through notice, thereby rendering the vehicle not subject to auction sale pursuant to A.C.A. § 27-50-1209. The Arkansas courts have long held that in interpreting statutory language, it is inappropriate to give the statute a reading that would result in an absurdity, or to presume that the legislature enacted a vain and meaningless law. See Yarbrough v. Witty, 336 Ark. 479, 484,987 S.W.2d 257(1999); Lawhon Farm Servs. v. Brown, 335 Ark. 272,948 S.W.2d 1 (1998); Citizens To Establish A Reform Partyv. Priest, 325 Ark. 257, 926 S.W.2d 432
(1996); Henson v. Fleet Mortgage Co., 319 Ark. 491,892 S.W.2d 250 (1995); Neely v. State, 317 Ark. 312, 877 S.W.2d 589 (1994);Death and Total Permanent Disability Trust Fund v. Whirlpool Corp.,39 Ark. App. 62, 837 S.W.2d 293 (1992). Accordingly, I believe the appropriate reading of the statutes is the one proposed in the preceding paragraph.
I should note that my proposed reading appears consistent with Arkansas Towing and Recovery Board Rule 1.1, adopted pursuant to the authority afforded the Board at A.C.A. § 27-50-1203(c), which you report provides as follows:
 All Licensees shall comply with the requirements for notification to owners and lien holder(s) as provided by [sic] in A.C.A. § 27-50-1208 and § 1209, as amended from time to time. Unless otherwise prescribed by law, any notice required to be given by a Licensee to the registered owner(s) and or lien holder(s) shall be given to those persons or entities listed as owner(s) and/or lien holder(s) on the records of the Office of Motor Vehicles, Arkansas Crime Information Center records, or the motor vehicle records of any other state if there is reasons [sic] to believe the vehicle may be registered in a state other than Arkansas.
(Emphasis added.) In my opinion, this regulation correctly acknowledges that the notification provisions of subchapter 12 are indeed "requirements" — i.e., that they are obligatory unless ownership and lienholder information remains unavailable despite the conduct of a "good faith search" as statutorily defined.
I appreciate that the foregoing leaves unanswered the question of what happens to an "unattended" or "abandoned" vehicle that has been impounded by a towing and storage firm that through either neglect or a lack of information fails to perfect its possessory lien by providing actual notice to the owner and to lienholders. The Code simply fails to address this situation, suggesting that legislative clarification is warranted.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh