

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-18-00148-CV

---

## IN THE INTEREST OF S.M.H. AND C.M.H., CHILDREN

---

On Appeal from the County Court at Law No. 2
Randall County, Texas
Trial Court No. 72,906-L2, Honorable Ronnie Walker, Presiding

---

November 6, 2019

## MEMORANDUM OPINION

### Before QUINN, C.J., and PIRTLE and PARKER, JJ.

This appeal involves effort to modify support obligations pertaining to two children and to confirm the existence of arrearages regarding those obligations. The matters were initially referred to an associate judge who conducted an evidentiary hearing on them. The evidence admitted in the hearing consisted of both live testimony and exhibits. Thereafter, the associate judge executed its written order 1) maintaining Father's general monthly child support obligation at $885, 2) increasing Father's monthly "cash medical support" obligation to $300, 3) finding Father to be in arrears with regard to his child support obligation in the amount of $112, and 4) finding Father to be in arrears with regard

to his medical support obligation in the amount of $410.88. Father moved the referring court to conduct a de novo hearing, which it did.

The evidence received by the referring court included live testimony from Mother and the reporter's record of the evidentiary hearing conducted by the associate judge. That reporter's record, however, did not include the exhibits which the associate judge had admitted.[1] Thereafter, the referring court entered its order entitled "Order on Trial De Novo" wherein it "adopted" the associate judge's order "as the Order of this court." Father appealed, asserting three issues. The three were whether "the trial court abuse[d] its discretion when it" 1) "increased the amount of health insurance reimbursement," 2) did "not order[] a decrease in child support," and 3) "granted a child support arrearage judgment against" Father. We affirm.

*Issue Three*

We first address Father's issue about arrearage. His contention that the trial court erred is premised on res judicata. That is, he suggests that any purported arrearage arose from noncompliance with temporary orders executed before entry of the final divorce decree some four years earlier. That final decree allegedly relieved Father from complying with obligations imposed by the previously existing temporary orders. Given that, he believed himself discharged from any arrearage relating to his failure to comply with those temporary orders, and, therefore his liability for those sums could not be re-litigated. We overrule the issue.

Father acknowledges that the amount of arrearage was reflected within an exhibit the State "attempted to offer" at the associate judge hearing. The exhibit was described

---

[1] Apparently, the associate judge returned to the parties all exhibits admitted at the hearing.

by the State as a "copy of the financial activity report in this case." The record of that hearing discloses that the State's effort encompassed more than an attempt to offer the document. In fact, it offered and the trial court admitted it. Nonetheless, the exhibit appears nowhere in the appellate record before us. Nor was it included as part of the reporter's record admitted during the de novo hearing. So, elemental to Father's argument is an exhibit before neither the referring court nor us.

Where an appellant fails to bring forward a complete record, the reviewing court will conclude that he waived issues dependent upon the missing evidence. *Ogbeide v. Limbrick*, No. 01-12-00352-CV, 2012 Tex. App. LEXIS 9628, at *5-7 (Tex. App.—Houston [1st Dist.] Nov. 21, 2012, no pet.) (mem. op.). This is so because we cannot review issues depending on the state of the evidence without a complete record. *Id.* Consequently, Father waived his complaint about the arrearage.

*Issue One*

Next, we address the complaint about the trial court's failure to reduce Father's child support obligation. Father argued that he "had the burden of proof to prove that his circumstances had changed since the rendition of the order to be modified, which he did." That evidence consisted of his testimony about being in bankruptcy from 2013 through 2015 and a copy of his 2016 Federal Income Tax Return. We overrule the issue.

A trial court may modify a previous child support order if "the circumstances of the child or a person affected by the order have materially and substantially changed" since the date of the order's rendition. TEX. FAM. CODE ANN. § 156.401 (a)(1)(A) (West Supp. 2018). To determine whether such a change occurred, a trial court must examine and compare the circumstances existing at the time of the initial order with those existing at

the time modification is sought. *In re C.C.J.,* 244 S.W.3d 911, 917 (Tex. App.—Dallas 2008, no pet.). In other words, both historical and current evidence of the relevant person's financial circumstances must appear of record and be compared. *London v. London,* 192 S.W.3d 6, 15 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Without evidence depicting the financial circumstances of the party at these relevant times prevents the court from determining that the requisite change occurred. *Plowman v. Ugalde,* No. 01-14-00851-CV, 2015 Tex. App. LEXIS 10655, at *10 (Tex. App.—Houston [1st Dist.] Oct. 15, 2015, no pet.) (mem. op.). And, the burden lies with the movant to provide the requisite evidence of his or her historical and current financial situation. *Id.*

The appellate record illustrates that the hearing before the associate judge was conducted in February of 2018. The referring court held its hearing one month later. In neither proceeding did Father proffer his 2017 tax return. Nor did he attempt in either to inform the fact-finder of his income for 2017. For instance, when asked if he knew if he "made 10,000 or 200,000" for that year, he answered "no." So too did he testify that he was unable to even offer a "ballpark" estimate of his 2017 income. On the other hand, he admitted to earlier "moving to this town" with a large savings garnered from a "lucrative" legal practice.

Without 2017 income data being proffered at a hearing held in 2018, both the associate judge and referring court could have reasonably decided that they lacked current financial data with which to undertake the comparison implicit in *Plowman*, *London*, *C.C.J.,* and the Family Code. Indeed, statute contemplates that parties inform the court of their **current** financial status covering at least the last two years. *See* TEX. FAM. CODE ANN. § 154.063(2) (West 2014) (stating that the trial court shall require a party

4

to produce copies of income tax returns "for the past two years, a financial statement, and current pay stubs"). Omitting income from 2017 fell short of that aim. So, we cannot fault either the associate judge's or referring court's decision on the record before them or us. Consequently, neither abused their discretion in refusing to grant Father's motion to reduce his child support obligation. *See Plowman*, 2015 Tex. App. LEXIS 10655, at *8-9 (noting that the trial court has broad discretion to modify support obligations and it abuses that discretion when it acts unreasonably or arbitrarily without reference to guiding principles or rules).

*Issue Two*

Through the final issue we address, Father complains of the increase in his cash medical support obligation. Allegedly, he objected to such an increase due to the absence of live pleadings requesting it. Furthermore, the $300 monthly payment purportedly exceeded 9% of his adjusted gross earnings, which violated statute. We overrule the issue.

As for the lack of pleadings, Father's objection was in response to Mother's request that he "begin to provide the health insurance himself as opposed to [Mother] providing it." He did not object on the grounds that Mother failed to plead for an increase in the amount of his cash medical support payment. Furthermore, the lower courts simply increased his cash medical support obligation; neither ordered him to assume Mother's duty to acquire insurance. So, Father is mistaken.

As for exceeding 9% of Father's income, section 154.182(b-1) of the Family Code provides that "[i]f the parent ordered to provide health insurance under Subsection (b)(1) or (2) is the obligee, the court shall order the obligor to pay the obligee, as additional child

5

support, an amount equal to the actual cost of health insurance for the child, but not to exceed a reasonable cost to the obligor." TEX. FAM. CODE ANN. § 154.182(b-1) (West 2014). "Reasonable cost" is defined as "the total cost of health insurance coverage for all children for which the obligor is responsible under a medical support order that does not exceed nine percent of the obligor's annual resources, as described by Section 154.062(b)." *Id.* § 154.181(e) (designated definition of "'reasonable cost'" by § 154.182(c)(2)). Additionally, the term "resources" includes, among other things, both one hundred percent of "all wage and salary income and other compensation for personal services" and "self-employment income." *Id.* § 154.062(b)(1), (3) (West Supp. 2018). Statute then defines self-employment income to mean "[i]ncome from self-employment, whether positive or negative, include[ing] benefits allocated to an individual from a business or undertaking . . . less ordinary and necessary expenses required to produce that income." *Id.* § 154.065(a) (West 2014). Regarding those necessary expenses, though, the trial court has the discretion to exclude amounts allowable under federal income tax law as business expenses which are "shown by the evidence to be inappropriate in making the determination of income available for the purpose of calculating child support." *Id.* § 154.065(b); *see In re B.Q.T.,* No. 05-14-00480-CV, 2016 Tex. App. LEXIS 2357, at *5 (Tex. App.—Dallas Mar. 7, 2016, no pet.) (mem. op.) ("federal income tax regulations are distinct from the rules in the family code, and calculations prepared under one set of rules do not necessarily comply with the requirements of the other"). Indeed, a fact-finder is not bound to accept representations in a federal tax return when calculating a parent's annual resources. *Hudson v. Markum*, 948 S.W.2d 1, 4 (Tex. App.—Dallas 1997, writ denied) (stating that "contrary to

6

appellant's contention, the jury was not bound by appellant's federal tax returns when it made its determination of appellant's annual net resources"). Given *Hudson,* if follows that a fact-finder has no obligation to accept the deductions expressed in a tax return as "necessary expenses" required to produce income. *Id.*

As previously mentioned, evidence of Father's current and 2017 income was not proffered at either hearing. This alone makes it difficult to analyze his appellate complaint. And, as for his 2016 income, that was purportedly depicted in his 2016 tax return. Per the return, Father, a criminal defense lawyer, earned a substantive gross income from which he deducted $45,469 as advertising expense and $32,550 as "filing fees." Regarding the latter deduction, Father testified that usually there were no filing fees associated with criminal cases and he was unable to explain why his "CPA put down filing fees of $32,000." As for the $45,000 advertising expense, Father acknowledged that the expenditure intended to enhance his income actually resulted in a $55,000 loss. Why a lesser advertisement expense could not have been incurred to gain the same result was an explanation omitted from his testimony. Nor did he explain or monetize the benefit received after paying $45,000 plus in advertising. Given the vagaries surrounding the reasonableness and necessity of these deductions, neither trial court at bar was bound to accept them as legitimate deductions from Father's resources. And, if both amounts were combined and added to Father's supposed net income for 2016 of a bit over $5,000, 9% of the resulting sum would far exceed the annual cost of the cash medical support ordered by the courts.[2]

---

[2] $45,000 + $32,550 + $5,000 = $82,550 x .09 = $7,429.50 while $300 x 12 = $3,600.

Having overruled Father's issues, we affirm the "Order on De Novo Trial" adopting the associate judge's order.

Brian Quinn
Chief Justice